MARGUERITE ERIC ET AL., EXECUTORS (ESTATE OF
HOWARD ERIC) *v.* WALTER W. WALSH,
TAX COMMISSIONER

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 4—decided July 21, 1948

*Louis Weinstein,* inheritance tax attorney, with whom, on the brief, were *William L. Hadden,* attorney general, and *Frederic W. Dauch,* first assistant tax commissioner, for the appellant (defendant).

*Curtiss K. Thompson,* with whom was *John H. Weir,* for the appellees (plaintiffs).

BROWN, J.   The plaintiff executors brought this proceeding in the Superior Court pursuant to § 1405 of the General Statutes, seeking a review of the defendant state tax commissioner's imposition of a penalty tax upon the estate of their decedent under the authority of § 1403. The court rendered judgment ordering the statement of such tax corrected to exclude the item in dispute and the defendant has appealed. The item was predicated upon a claimed obligation to the decedent in connection with which he had the right to sell certain securities and apply the proceeds to the debt and upon which no tax had been assessed in Stamford, where the decedent resided, or paid to the state. Whether the decedent's estate is subject to a penalty tax upon this item under § 1403 is the question for determination.

The facts are undisputed and may be thus summarized: Howard Eric, the decedent, died November 28, 1941, a resident of Stamford, where he had been domiciled for the preceding five years. The plaintiffs are the duly qualified executors under his will, and his estate is in process of settlement in the Stamford Probate Court. The plaintiffs duly filed an inventory of the assets of the estate which included the item "Indebtedness owing from Louis J. Drevers resulting from liquidation of Eric & Drevers," appraised by the official appraisers appointed by the Probate Court at $72,494.02. The plaintiffs filed with the inventory their affidavit showing that on the taxing day of the last completed taxing period prior to the decedent's death no taxes were assessed on this item by Stamford and that during the year prior to his death no taxes were paid to the state tax commissioner, and claiming that it had not been subject to taxation by the state or town prior thereto. Since before 1938, October 1 has been the beginning of the taxing period in each year for Stamford.

On March 15, 1944, the defendant, acting under the statutes, assessed a penalty tax of $3995.01 against the decedent's estate. The only item thereof which is in dispute is "Indebtedness of Louis J. Drevers; Net taxable at 2% per annum $72,494.02; number of years taxable 2; amount of tax $2,899.76." This indebtedness refers to a claimed liability of Drevers to the decedent under a covering letter and two written agreements comprising a contract. From 1910 until the decedent's death, the two men had been associated in conducting, by a series of partnerships, a stock brokerage business in New York City under the name of Eric and Drevers. During this period Drevers was at all times domiciled in New York. As of June 30, 1938, the partnership which had then existed for sev-

eral years was dissolved. At that time there was a deficit in Drevers' capital account of $481,897.28 which he was unable to pay. Concerning this the two signed the three writings mentioned and hereinafter referred to, the last executed November 10, 1938. Upon the dissolution of the partnership, a new partnership of the same name, in which the decedent became a limited and Drevers a general partner, continued the business in New York City until the death of the former. Before the death of Eric, Drevers' indebtedness to him was reduced $4,684.92 by means of proceeds of securities sold pursuant to the written agreement.

Certain of the securities were held by another brokerage firm. With the exception of those sold as above stated, the other securities referred to in the agreements, of which the decedent and Drevers were equal owners, were kept by the decedent in his safe deposit box in a New York bank until his death. When this occurred on November 28, 1941, Drevers' net worth, aside from his indebtedness to the decedent and the value of the securities, was $6,599.10, and it had exceeded that amount at no time subsequent to the execution of the first written agreement. At the decedent's death, the securities referred to in the contract and which had not been sold had an aggregate fair market value of $65,894.92 in excess of the balances due the brokerage firm which held a portion of them. The $72,494.02 upon which the defendant determined the disputed tax represents the total of $65,894.92 and $6,599.10.

The court concluded that, since the indebtedness described in the written agreements would only become payable upon a contingency which had not arisen, was not certain to occur and might never happen, it was not enforceable by legal process and therefore was not

an indebtedness constituting a credit or chose in action as those terms are employed in § 1147 of the General Statutes and § 322e of the 1939 Cumulative Supplement. The former section is hereinafter quoted. The latter provides for payment by the owner of a tax of 2 per cent for five years of the face value of any bond, note or other chose in action to the state tax commissioner, which upon his certification thereof to the town clerk of the town where the taxpayer resides is operative to exempt the obligation from all taxation in the state during the period for which the tax is so paid. By the contract, Drevers agreed to pay the decedent $481,897.28, without interest, in full settlement, "when and as soon as he is financially able to pay the same." The decedent agreed not to attempt to enforce payment by legal process "until such time or times as Drevers is able to pay the same" and agreed to permit Drevers to postpone payment thereof accordingly. Had the contract stopped there, it is manifest that the court's conclusion would be correct. It went on to provide, however, that any amount realized from the securities should be paid to the decedent on account of the indebtedness, and further specified that "the said securities may be sold by order of either party to this agreement." No claim is made that the decedent could not order the securities in the possession of the broker to be sold at any time. Whether this provision is operative, under the circumstances, to eliminate the contingency as to the part of the indebtedness equal in amount to the value of Drevers' interest in the securities upon the pertinent assessment date, and so to constitute so much of it a credit or chose in action within § 1147, warranting the imposition of the penalty tax under § 1403, is the first question presented for decision. The court expressly concluded that it is not. The question calls for a deter-

mination of the legislative intent as expressed in § 1147.

Section 1147 is entitled "Personal property liable to taxation," and the pertinent provisions are: "All notes, bonds and . . . credits, choses in action . . . goods, chattels or effects, or any interest therein, belonging to any resident in this state, shall be set in his list in the town where he resides at their then actual valuation. . . ." In so far as it relates to the taxpayer's indebtedness, the theory of the statute is that "the debt is property in his hands constituting a portion of his wealth, from which he is under the highest obligation . . . to contribute for the support of the government whose protection he enjoys." *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 498, 25 L. Ed. 558; *Bridgeport Projectile Co.* v. *Bridgeport,* 92 Conn. 316, 322, 102 A. 644. "The statute was intended to cover all classes of intangible property, and that construction has been reflected in the practice in this jurisdiction and in the decisions of this court." *Lockwood* v. *Blodgett,* 106 Conn. 525, 531, 138 A. 520. "The word 'property', as that term is used in the statutes relating to assessment and taxation, refers to every species of valuable right or interest which is subject to ownership, or that which has an exchangeable value or which goes to make up one's wealth or estate; all things which have a pecuniary value. 'Property' says Webster, 'in a broad sense, is any valuable right or interest considered primarily as a source or element of wealth.'" *Kansas City Life Insurance Co.* v. *Hammett,* 177 La. 930, 934, 149 So. 525. By its express terms the statute applies not only to credits and choses in action but also to "any interest therein." Further, the inclusion in the statute of the general terms "credits" and "choses in action" as well as "notes" and "bonds" indicates a legislative intent to

accord to the former terms a more inclusive meaning than falls within the strict technical connotation of an obligation described by the latter.

In legal parlance, credits are choses in action and, broadly speaking, the terms are practically synonymous. *Exchange Bank of Columbus* v. *Hines,* 3 Ohio St. 1, 24; *Mountain State Motor Car Co.* v. *Solof,* 97 W. Va. 196, 199, 124 S. E. 824; 21 C. J. S. 1041. The inclusive meaning accorded to the term "chose in action" in connection with taxation is well illustrated in *Silberman* v. *Blodgett,* 105 Conn. 192, 214, 134 A. 778, where we held that an interest in a partnership was a chose in action taxable under the succession tax law, a conclusion affirmed in *Blodgett* v. *Silberman,* 277 U. S. 1, 11, 48 S. Ct. 410, 72 L. Ed. 749. Furthermore, "Credit is the correlative of debt or indebtedness, and that which is due to any person as distinguished from that which he owes." *Mountain State Motor Car Co.* v. *Solof,* supra. Accordingly, the terms " 'choses in actions' and 'debt' are used by courts to represent the same thing when viewed from opposite sides. The chose in action is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay.' " *Smead* v. *Chandler,* 71 Ark. 505, 512, 76 S. W. 1066. Debt broadly defined is what one owes to another. *Sherwood* v. *Bridgeport,* 123 Conn. 348, 351, 195 A. 744. In applying this taxation statute, however, "This broader significance is . . . subject to the inherent limitation that the indebtedness created or constituted by a debt is, necessarily, that only of the party from whom the debt is owing, who is under an obligation to the creditor to pay, and against whom the latter has a right to receive and enforce payment." *Lenox Realty Co.* v. *Hackett,* 122 Conn. 143, 147, 187 A. 895. Or, as we have also stated this second requisite, " 'that of which payment is liable to be exacted.' " *Guilford-*

*Chester Water Co.* v. *Guilford,* 107 Conn. 519, 529, 141 A. 880; *Cook* v. *Bartholomew,* 60 Conn. 24, 26, 22 A. 444. In the instant case, therefore, it is essential that the indebtedness, to be taxable under § 1147, be an obligation by Drevers to make payment and that the decedent have the right and power to exact it.

As appears from the language of the contract already quoted, Drevers was to pay when financially able and the decedent was not to enforce payment by legal process until such time. Under these provisions there is neither the certainty of obligation nor the power in the decedent to compel payment essential to constitute this a taxable indebtedness. The provision of the agreement which immediately ensues, however, expressly gives the decedent the right to dispose at will of the securities and to apply the proceeds of Drevers' interest therein to reduce the debt. This is just as much a part of the agreement as is that which precedes. The net effect of the contract, therefore, is that so much of the debt as equaled the value of Drevers' interest in the securities was due and payable at the decedent's election. Drevers' obligation to pay the debt in this amount constituted a credit and a chose in action within the statute just as truly as would a demand note for that sum, although the balance of the indebtedness might never become payable because of the contingency attached to it which might never happen. While the earlier provision precluded resort by the decedent to legal process to compel payment, the express unlimited right and power to sell the securities and apply the proceeds on the debt is obviously at least as effective and expeditious a method of collecting it as legal proceedings could afford. Applying the principles to which we have referred relative to the interpretation of the statute, and giving effect to the provisions of the contract in the light of the existing

circumstances, we conclude that the indebtedness to the extent we have stated falls within the designation of property which was subject to taxation under § 1147 and that the court was mistaken in so far as it held otherwise.

This conclusion, however, is not determinative of the appeal. Section 1403 prescribes that "all taxable property" on which no tax has been paid shall be liable to "a tax of two per centum per annum on the appraised inventory value of such property." It follows from the use of this language in the statute that unless the appraised item in its entirety is subject to the penalty the commissioner is without authority to impose any tax, and manifestly the court in a proceeding under § 1405 cannot become the arbiter of a value which the statute puts in the sole discretion of the appraisers of the estate. Whether the defendant was warranted in imposing a penalty tax upon the item of $72,494.02 depends therefore upon whether there was any part of that amount which was not subject to this tax under the statutes. It is clear that the $6,599.10 representing Drevers' "net worth" was not taxable since the fact that he was "able to pay the same," as prescribed in the contract, does not appear. Accordingly, the $72,494.02 item in toto was not subject to payment of a penalty tax, and the defendant was therefore unwarranted in imposing any tax thereon. This does not mean, however, that the tax commissioner is without power to exact a penalty tax in any case where a nontaxable item is part of a total wherein taxable items are also included. Section 4911 entitles him, or any interested party, to object to the acceptance of the inventory and appraisal by the Probate Court, and to a hearing thereon. Upon such hearing, the court may order the executor "to amend such inventory or appraisal in any way that it shall find

proper, and may accept the same as amended." This procedure, supplemented as it is by the right of appeal from the Probate Court's decision, insures full and proper opportunity for the collection of the tax under such circumstances.

For the reasons which we have stated, the Superior Court did not err in ordering the statement of tax corrected to exclude the item for indebtedness of Louis J. Drevers and in fixing the amount of the tax due at $1095.25. Our decision renders it unnecessary to discuss the plaintiffs' cross-appeal.

There is no error.

In this opinion the other judges concurred.