GOLDSMITH *v.* ALBION PUBLIC SCHOOLS.

1. ELECTIONS—BOND ISSUES—QUALIFICATIONS OF ELECTORS. .
   A bond issue would be invalidated where it was carried by a margin of 101 votes, if 156 voters who did vote were declared ineligible.

2. CONSTITUTIONAL LAW—CONSTRUCTION—ORDINARY MEANING OF WORDS.
   Words used in the Constitution are to be given their natural, obvious, and ordinary meanings, and not a technical meaning.

3. SAME—PROPERTY—QUALIFICATIONS OF ELECTORS.
   The interest of a land contract vendee is *property,* according to the common usage of that term as it is employed in the Constitution whereby voting on questions involving the direct expenditure of public money or the issue of bonds was limited to electors having *property* assessed for taxes in the district affected by the result of the election, or the spouses of such electors (Const 1908, art 3, § 4).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–5]  43 Am Jur, Public Securities and Obligations § 98.
[2]  11 Am Jur, Constitutional Law § 65.
[6]  14 Am Jur, Costs § 91.

4. ELECTIONS—DIRECT EXPENDITURE OF PUBLIC MONEY—BOND ISSUES
—ELECTORS—VENDEE UNDER LAND CONTRACT.

A vendee under a land contract, or the lawful spouse of such
vendee, if otherwise qualified as an elector, is entitled to vote
upon a question involving the direct expenditure of public
money or the issue of bonds, since such a vendee is the holder
of property (Const 1908, art 3, § 4).

5. SAME—DIRECT EXPENDITURE OF PUBLIC MONEY—BOND ISSUE—
ELECTORS—ASSESSMENT ROLLS.

The names of electors owning property assessed for taxes need
not appear on the assessment rolls in order to entitle them to
vote on questions involving the direct expenditure of public
money or the issue of bonds (Const 1908, art 3, § 4).

6. COSTS—PUBLIC QUESTION—ELECTIONS—BOND ISSUE.

No costs are allowed in quo warranto proceeding to invalidate
results of election on bond issue, a question of public interest
being involved.

Original quo warranto by Frank M. Goldsmith
and 5 other electors against Albion Public Schools,
and its board of education, to invalidate results of
election on bond issue. The Attorney General in-
tervened in the public interest. Submitted February
6, 1964. (Calendar No. 43, Docket No. 50,225.)
Petition denied July 8, 1964.

*George R. Beach,* for plaintiffs.

*Fred M. Thrun* and *G. Douglas Clapperton* (*Rob-
ert M. Thrun,* of counsel), for defendants.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Maxine Boord
Virtue* and *Gerald O'Reilly,* Assistant Attorneys
General, for intervenor Attorney General.

SMITH, J. Plaintiffs, electors and taxpayers in
defendant school district, instituted in this Court
on December 28, 1962, proceedings in the nature of

quo warranto, alleging that a bonding election held in said school district on October 4, 1962, was invalid. Out of 2,498 ballots cast, the bonding proposal carried by 101 votes. Plaintiffs claimed that approximately 185 persons who voted were ineligible by reason of disqualification either because they had no property assessed for taxes or that their names did not appear upon the tax rolls.

A stay order was issued January 2, 1963, holding in abeyance further proceedings by defendants to issue bonds, et cetera, pending further order. We issued to defendants an order to show cause why the election and proposed bonds should not be voided. The attorney general intervened on behalf of the people to present his views on 1 of the important issues in the case. Thereafter, this Court remanded the matter to the Calhoun county circuit court for the taking of proofs, and for the conclusions and opinion of that court.

The circuit court, after hearing, made detailed findings as to the tax and assessment status of 169 persons who voted in the election and whose right to vote is challenged by plaintiffs. Insofar as this review is concerned, it is necessary to discuss only the 2 larger categories totaling 156 voters. The first category consists of 94 voters "who were vendees under land contracts, or the spouses thereof, and who by the terms of the land contract were obligated to pay the real-estate taxes on said property within the Albion Public School District" on election day. The second category consisted of 62 voters who owned real property by warranty deed on election day but whose names did not appear on the assessment rolls. By simple arithmetic, if these voters are found to have been disqualified then the bonding proposal which carried by a margin of 101 votes would be voided by subtraction of the 156 disqualified votes.

The first question is whether a person otherwise qualified as an elector who is a purchaser of real property under a land contract, or the lawful husband or wife thereof, and who by the terms of the contract is obligated to pay taxes on said property, has property assessed for taxes within the meaning of article 3, § 4, of the Michigan Constitution of 1908, and therefore is qualified to vote upon a question involving direct expenditure of public money.

Although 2 attorneys general have expressed opinions on the subject*, this is an important case of first impression for this Court. Involved is the construction of article 3, § 4, of the Michigan Constitution of 1908, which read as follows:

"Whenever any question is submitted to a vote of the electors which involves the direct expenditure of public money or the issue of bonds, only such persons having the qualifications of electors· who have property assessed for taxes in any part of the district or territory to be affected by the result of such election or the lawful husbands or wives of such persons shall be entitled to vote thereon."

Plaintiffs argue that because a land contract vendee has been adjudicated to have only an equitable interest in the property, then such interest "is equivalent to the right to become owner at a future time"; therefore, plaintiffs say, such a vendee does not have property, within the meaning of the Constitution, but a mere inchoate and executory right. Defendant argues that in construing the Constitution, words are accorded ordinary and not technical meanings. Under ordinary usage, a land contract vendee is said to "have property" within the meaning of the Constitution, defendants say. The attorney general's position is that of a predecessor who opined

---

* 1943–1944 OAG, No 0–1801, p 668.
2 1955–1956 OAG, No 2720, p 435.

that the meaning of the constitutional provision is that an elector who owns property is entitled to vote in such election, "and that such ownership need not necessarily require the holding of legal title."

Chief Justice Marshall, in the landmark case of *McCulloch* v. *Maryland,* 4 Wheat (17 US) 316, 414 (4 L ed 579), said this in discussing the interpretation of a word used in the Federal Constitution:

"Almost all compositions contain words, which, taken in a rigorous sense, would convey a meaning different from that which is obviously intended. It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense—*in that sense which common usage justifies.*" (Emphasis supplied.)

This Court, in subscribing to the common usage interpretation of Chief Justice Marshall, said in the case of *John Hancock Mutual Life Insurance Co.* v. *Ford Motor Company,* 322 Mich 209, 222, in referring to Michigan constitutional language, that "Words used therein are to be given their natural, obvious and ordinary meanings and not a technical meaning." Of the same holding was the earlier case of *Decher* v. *Secretary of State,* 209 Mich 565.

The question may now be posed as to whether land contract vendees "have property" within the meaning of the language in article 3, § 4, *supra.* Plaintiffs' contention that this language requires the voter to be a deedholder is a construction too technical to come within the stated rule. Based upon common usage, the natural, obvious and ordinary meaning of the phrase to "have property" cannot be restricted to those who are deedholders. The word "property" is susceptible of broad definition. In a broad sense, it is defined as any valuable right or interest considered primarily as a source or element of wealth. *Eric* v. *Walsh,* 135 Conn 85 (61 A2d 1). The word

is said to be so all-embracing as to include every physical object, intangible benefit, and prerogative susceptible of ownership, possession, or disposition. *Button* v. *Hikes,* 296 Ky 163 (176 SW2d 112, 150 ALR 779), *Downing* v. *Municipal Court of San Francisco,* 88 Cal App 2d 345 (198 P2d 923). We need not, and do not, decide that the word "property" as used in article 3, § 4, encompasses such broad definition. The above cases are cited merely to show the spectrum of rights covered by the term "property." What we do decide, and this only, is that within the broad spectrum of rights included in the term "property" is the interest of a land contract vendee, according to common usage. Such an interest usually carries with it valuable rights ordinarily understood to be property rights such as the right of possession, control and disposition. Hence, to "have property", within constitutional meaning, may be said to embrace having a vendee's interest in a land contract. Therefore, under the constitutional provision involved, the vendee under a land contract, or the lawful husband or wife thereof, is entitled to vote upon a question involving direct expenditure of public money or the issue of bonds, if otherwise qualified as an elector.

The next question is that raised by the second category of 62 challenged votes. Such persons who voted, or lawful spouses thereof, were found to be owners of property (by warranty deed, in fact) whose property was assessed for taxes as of the election date, but whose names did not appear on the assessment rolls. Must the name of a person, otherwise qualified as an elector, and who has property assessed for taxes, or the lawful husband or wife of such person, appear on the tax rolls of the district or territory to be affected by the result of an election on the question of issuing bonds, in order to be eligible to vote on said question? A reading

of the language of article 3, § 4, *supra,* would, standing alone, seem to answer the question in the negative.   To "have property assessed for taxes" is a phrase which, when read in or out of context, furnishes no warrant for the conclusion that the names of such persons must have reached the tax rolls before they are entitled to vote.   Any other limitation on the franchise would have been clearly expressed or implied.   Yet plaintiffs would have us read the phrase as if the framers had added to it the qualifying phrase, "and appearing on the tax rolls of such district", or some such language.   Both framers and adopters of the Constitution must have had in mind the fact that property is frequently transferred after assessment rolls are prepared. Had they intended to limit further the franchise we think that appropriate language would have been employed.

We hold that the persons described in the 2 categories discussed above were entitled to vote and that the challenge to the election results must, therefore, fail.   Other questions presented have been found not to merit discussion.

Judgment denying petition and dissolving the stay is ordered entered.   No costs, this case involving determination of a question of public interest.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, O'HARA, and ADAMS, JJ., concurred.