No. 50,287

CLARK EQUIPMENT COMPANY, A Delaware Corporation, *Appellant,* v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Appellee,* v. KROBLIN REFRIGERATED XPRESS, INC., *Third Party Defendant-Appellee.*

(608 P.2d 903)

Opinion filed April 5, 1980.

*Donald W. Bostwick,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *John E. Foulston,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is an action by Clark Equipment Company (Clark) as a loss payee against the insurer, Hartford Accident and Indemnity Company (Hartford), to recover for an insured refrigerated semitrailer. A covered risk of the policy was "loss by reason of theft or larceny." The trial court held that the trailer was missing, but that theft was but one of several equally possible explanations for its disappearance, and denied recovery. The trial court further held that attorney fees, in any event,

should not be allowed against defendant. Clark appeals from both the denial of recovery and the determination relative to attorney fees.

The complicated factual situation will be summarized and simplified wherever possible. On February 6, 1970, plaintiff Clark sold the trailer to James Kelly, d/b/a Kelly Trucking Company, operating out of Wichita, Kansas. As a condition of the sale Kelly was required to insure the trailer and to designate Clark as loss payee thereon. This was done with the purchase of the Hartford policy. The trailer was used in interstate hauling. In 1972, Kelly experienced financial reverses and on August 23 of that year executed an operating contract with Kroblin Refrigerated Xpress, Inc. (third party defendant), of Waterloo, Iowa, whereby various trailers, including the one in question, were to be operated by Kroblin.

The trailer with which we are concerned was last pulled by a Kelly driver on October 21, 1972, when it was left in New Hampton, Iowa, for unloading. At this point the trailer no longer appears on Kelly logbooks and begins appearing on Kroblin logbooks, where it is designated as Kroblin 1245. Kroblin records indicate it was routinely used for various loads until November 22, 1972, when it was in Magodore, Ohio. After that date, it never again appears on Kroblin's logbooks. Kroblin speculates one of its drivers hauled the trailer to Mansfield, Ohio, and relayed with a Kroblin driver named Julius Wagner.

The next known event in the trailer odyssey is that on or about December 1, 1972, Kelly was telephoned by an Ohio highway patrol officer who advised that trailer 1245 had been parked along a highway for about a week and would be towed away. Kelly contacted the Kroblin dispatcher about the call and was advised that it would be taken care of. The trailer's tags had been changed, but there is no question that it was Kroblin 1245. On December 2, 1972, the same Kroblin driver previously referred to, Julius Wagner, paid the fine and towing charges in Ontario, Ohio, and presumably left town with the trailer. A truck stop owner in Van Wert County, Ohio, stated that a Kroblin driver unhitched a Kroblin trailer on his lot on December 3 to have the tractor repaired. Kroblin records indicate Julius Wagner had a tractor repaired on the same date at the same truck stop. In January of 1973 someone stating he was from Kroblin called the truck stop

and asked whether trailer 1245 was there. The trailer was not there at that time.

Meanwhile, during the fall of 1972, Kelly's financial problems had worsened and Clark started repossessing all the trailers Kelly had purchased from it—these were all in Kroblin's custody. Kelly called to try and locate Kroblin 1245 and the disappearance of the trailer surfaced. On January 9, 1973, Kroblin reported to the Van Wert County, Ohio, sheriff's office that the trailer had been stolen from the truck stop. A claim was duly filed with Hartford. Kelly ultimately went into bankruptcy and this action was brought by Clark under the loss payable clause to recover the market value of the trailer ($9,500), which was less than the balance owed Clark. The trailer has never been recovered.

In the trial of the case herein no live testimony was presented. The evidence consisted solely of depositions and written documents. The proper standard of review in such instances is stated in *Fourth Nat'l Bank & Trust Co. v. Mobil Oil Corp.*, 224 Kan. 347, Syl. ¶¶ 1 and 2, 582 P.2d 236 (1978), as follows:

"When a case is submitted to the trial court on an agreed stipulation of facts and documentary evidence, this court is afforded the same opportunity to consider the evidence as the trial court."

"Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine *de novo* what the facts establish. (Following *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, 572, 545 P.2d 399 [1976].)"

Accord, *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979).

The assured has the burden of proving that the loss was of a type included in the general coverage provisions of the insurance contract. *Baugher v. Hartford Fire Ins. Co.*, 214 Kan. 891, 900-901, 522 P.2d 401 (1974).

The semitrailer left Clark's custody in 1970 and left Kelly's custody on October 21, 1972. From that point it was in the lawful custody of Kroblin. There is not one scintilla of evidence that either Clark or Kelly asserted any control over the vehicle after it passed to Kroblin on October 21, 1972. Inasmuch as a Kroblin driver paid the fees and towing charges on the trailer on December 2, 1972, it is more probable than not that he hauled the

trailer from the impoundment lot on that date. Likewise, it is more probable than not that he hauled it to the truck stop in Van Wert, Ohio. The one person who could testify positively as to whether this occurred is the Kroblin driver, Julius Wagner. For reasons unknown, no statement from him is in evidence.

Normally, an assured has greater knowledge of the facts surrounding a loss than does the insurance company. In this particular case this is not true. The events in question occurred in the State of Ohio while the trailer was in the lawful custody of a third party. The assureds have a duty to disclose all known facts to the insurance company, but under the circumstances herein this does not require the assureds to conduct a full scale investigation of what transpired. The insurance company had a duty to investigate and did conduct an investigation over a period of years. The evidence as to what happened is conflicting in some respects, particularly as to the content of some telephone conversations between Kelly and Kroblin, but does not conflict in any crucial respects. We really do not have two different versions of what happened to the trailer. We have only one rather sketchy set of facts with different inferences which may be drawn therefrom.

In determining which is the most probable inference we must consider the nature and characteristics of the property claimed to have been stolen. The missing trailer is a large refrigerated semitrailer—not an item easily mislaid. The missing trailer is an item required to be licensed and show appropriate current tags in order to be operated upon the highways. Further, its highway use involves detailed log-keeping. Under such circumstances, continued operation by one mistakenly believing the trailer to be his own would be highly improbable. Deliberate alteration of numbers or other acts of concealment of true identity would be necessary for continued on-the-road use. The trailer is an inanimate object incapable of straying away on its own. The length of time (seven years) which has elapsed from the disappearance of the trailer is inconsistent with an inference the item is lost or misplaced, or that it is in the honest possession of anyone. *Sowden v. United States Fidelity & Guaranty Co.,* 122 Kan. 375, 378, 252 Pac. 208 (1927). Further, the fact this is a valuable piece of equipment lessens the likelihood of misplacement.

The assured is not required to identify or apprehend the thief in order to recover under the policy. As this court stated in *Baugher v. Hartford Fire Ins. Co.,* 214 Kan. at 904:

"If the appellees were required to prove who stole the cattle to establish proof of loss under the policy, there would be no need for insurance. The appellees could pursue the cattle and recover them. The substantial premium paid for a policy of this type would have been for naught."

We must conclude that the most probable inference from the evidence herein is that the lawful owners have been feloniously deprived of the possession of their property by another person or persons unknown, and that is a sufficient showing of theft within the meaning of the policy.

Before determining whether judgment should be entered in favor of Clark by this court, or whether the case should be remanded to the district court for further proceedings, we must consider whether the district court erred in denying attorney fees to Clark.

K.S.A. 40-256 provides:

"**Attorney fees in actions on insurance policies; exception.** That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs: . . . ."

The trial court entered judgment in favor of the insurance company, which precluded the trial court from awarding attorney fees. However, the trial court felt strongly enough about the matter to conclude:

"That notwithstanding the Court's conclusion as to liability, the Court specifically finds that defendant had just refusal not to pay under the policy of insurance, and plaintiff is not entitled to attorneys' fees."

Whether or not an insurance company has refused without just cause to pay a claim is a question of fact. *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, Syl. ¶ 1, 597 P.2d 1080 (1979); *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, Syl. ¶ 1, 470 P.2d 756 (1970).

Whether attorney fees are awardable under K.S.A. 40-256 depends on the facts and circumstances of the particular case. *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973); *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969). What constitutes refusal to pay

"without just cause or excuse" varies with each case. *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. at 565, held the above phrase to mean "frivolous and unfounded," and that denial of liability must be patently without any reasonable foundation. Attorney fees must be denied when there existed a good faith legal controversy as to liability. *Forrester,* at 452. If there is a bona fide and reasonable factual ground for refusing to pay a claim, attorney fees are not awardable. *Koch,* at 565. Denial of payment where not arbitrary, capricious, or in bad faith will not give rise to an award of attorney fees. *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 615, 549 P.2d 1354 (1976).

During Hartford's investigation of the claim, a Kroblin official advised Hartford of his suspicions that Kelly had the trailer. Later, this was admitted to be a wholly unfounded comment, but presumably this comment had some effect on Hartford's actions. The loss of the trailer occurred under mysterious circumstances at a time when Clark was trying to repossess it. The trial court had considerable opportunity through pretrial and trial to form an opinion as to whether Hartford refused to pay without just cause or excuse. We cannot say the trial court abused its discretion in concluding that attorney fees were not proper, even if it had found in favor of Clark.

Under the totality of the circumstances herein, there is no valid reason to remand the case for further proceedings. The judgment entered in favor of defendant Hartford is vacated; judgment is entered in favor of plaintiff Clark in the amount of $9,500 and its costs; and the judgment denying attorney fees is affirmed.