SECURITY STATE BANK OF KANSAS CITY, Plaintiff,

v.

AETNA CASUALTY AND SURETY COMPANY, Defendant.

No. 91–2257–KHV.

United States District Court, D. Kansas.

June 4, 1993.

Mark S. Gunnison, McDowell, Rice & Smith, P.C., Overland Park, KS and Shawn E. DeGraff, Shawnee Mission, KS, for plaintiff.

Bruce Keplinger and Donald R. Whitney, Payne & Jones, Chtd., Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This case presents the issue of whether defendant, Aetna Casualty and Surety Company ("Aetna"), wrongfully failed to defend and indemnify plaintiff, Security State Bank of Kansas City ("Security"), for an action brought against Security in the United States District Court for the District of Kansas entitled *Frank S. Schmidt & Janet H. Schmidt v. Security Bank of Kansas City, et al.*, Case No. 89–4155–R. The plaintiffs in that case sued on theories of fraud, misrepresentation, negligence, tortious interference with contract, and breach of fiduciary duty. Security settled the case with the Schmidts for $80,000 and incurred an additional expense of $55,539.69 in defending the action.

The instant case comes before the Court on cross-motions for summary judgment. The parties have agreed that there are no issues of material fact and that the Court may decide the case as a matter of law based on the proper interpretation of the insurance policy issued to Security by Aetna. In making its ruling, the Court has considered the uncontroverted facts, the briefs of the parties, and the applicable law.

### Standard for Summary Judgment

Summary judgment must be granted when there are no genuine issues of material fact and movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Here, both parties have stipulated there are no factual disputes and agree the Court may decide the case based wholly on the submitted briefs.

## Uncontroverted Facts

In August of 1983, the Schmidts sold shares of stock under an escrow agreement. Security was the escrow agent. The agreement called for the buyers of the stock to make one annual payment each December 15th for seven consecutive years. In return for each payment, the buyers would receive a certain percentage of the total shares involved. The first annual payment and share transfer was made without incident. In the second year of the agreement, the buyers' payment was tendered one month late. Security returned the proffered payment to the buyers and told the Schmidts that payment had not been made and that the buyers were in default. The buyers made a second tender which Security also rejected on the grounds it was in a form not acceptable to the bank.

The Schmidts filed suit against Security claiming fraud, misrepresentation, negligence, tortious interference with contract, and breach of fiduciary duty. Security had a Comprehensive General Liability ("CGL") insurance policy issued by Aetna with a policy limit of $500,000.00 per occurrence.

The insuring agreement of the policy reads as follows:

### I. BODILY INJURY LIABILITY COVERAGE PROPERTY DAMAGE LIABILITY COVERAGE

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of:

### bodily injury or property damage

to which this insurance applies, caused by an **occurrence,** and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury or property damage,** even if any of the allegations of the suit are groundless, false or fraudulent

## Conclusions of Law

### 1. Rules of Construction

▉▉▉ When construing the terms of an insurance policy, the Court must interpret the language according to its "plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *American States Ins. Co. v. McCann,* 845 P.2d 74, 77 (Kan.App.1993) (quoting *Krombach v. Mayflower, Ins. Co.,* 785 S.W.2d 728, 731 (Mo.App.1990)). If an insurance contract is ambiguous, the language is strictly construed against the drafter. *Topeka Railway Equip., Inc. v. Foremost Ins. Co.,* 5 Kan. App.2d 183, 186–87, 614 P.2d 461 (1980). Ambiguity arises only if the language at issue is subject to two or more reasonable interpretations and its proper meaning is uncertain. *Id.* (citations omitted). "It is a cardinal rule of construction that courts will not rewrite a contract by construction if it is clear and unambiguous." *Thomas v. Thomas,* 250 Kan. 235, 824 P.2d 971, 977 (Kan. 1992) (citation omitted). The insured has the burden of showing a claim falls within policy coverage. *Clark Equipment Co. v. Hartford Accident & Indem. Co.,* 227 Kan. 489, 608 P.2d 903 (1980).

### 2. The Insurer's Duty

▉▉ Under the standard insurance policy, the insurer has a duty to both defend and indemnify the insured for claims falling within policy coverage. The duty to defend is broader than the duty to indemnify. Under the terms of its policy, Aetna must defend actions which *might not ultimately result in a duty to indemnify. Hocker v. New Hampshire Ins. Co.,* 922 F.2d 1476, 1484 (10th Cir.1991). As long as the complaint in the underlying action presents allegations which are even arguably within the protection of the policy, the duty to defend arises. *American Motorists Ins. Co. v. General Host Corp.,* 946 F.2d 1489, 1490 (10th Cir.1991).

▉ An insurer is not required to defend, however, if the action is brought "wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 684, 512 P.2d 403 (1973).

### 3. Interpretation of "Property Damage" Clause

As recognized by both parties, the threshold issue is whether the Schmidts' lawsuit was a suit for "property damage" as that term is defined by the insurance policy.[1] The policy defines "property damage" as follows:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

In their suit against Security, the Schmidts claimed Security wrongfully withheld escrow payments which had been tendered by the buyers. The escrow payments were not physically injured or destroyed so we are concerned only with part (2) of the definition of property damage. The issue thus becomes whether escrow payments are "tangible property" as that term is defined by the policy.

██ Unlike "property damage," the term "tangible property" is not defined by the policy. The fact that a policy does not define each term used within it does not somehow make the undefined term ambiguous. A policy which attempted to define each term used within it would be lengthy indeed.

██ In its brief, Security cites the general rule that ambiguous language is strictly construed against the insurance company. What Security has failed to do is point out the language it considers ambiguous. The Court finds the policy language at issue (the definition of "property damage") is not ambiguous and will give the words used their usual and ordinary meaning.

Black's Law Dictionary defines "tangible property" as "property that has physical form and substance and is not intangible. That which may be felt or touched, and is necessarily corporeal, although it may be either real or personal (e.g. ring or watch)." Black's Law Dictionary 1456 (6th Ed.1990).

Security cites *Temco Metal Products, Co. v. St. Paul Fire & Marine Ins. Co.*, 273 Or. 716, 543 P.2d 1, 2 (Ore.1975) for the proposition that money may be considered tangible property in certain contexts. However, the very next line after those quoted by Security states "we do not believe that paying money out on forged checks constitutes injury to or destruction of it as contemplated by the parties to the policy in question." *Id.* The court obviously drew a distinction between the forged checks and the money they represented. Security acknowledges the majority view that money is not tangible property but argues the rule is a product of cases which dealt with anticipated profits and losses of investments of uncertain amounts. Though the monetary losses in the cases cited by Security can certainly be categorized in such a manner, the holding of those cases is based on the notion that the losses were strictly *economic*, not that they were for sums uncertain in amount.

For example, the exact dollar amount of the forged checks at issue in *Temco was* known and that fact did not cause the *Temco* court to hold that a loss of tangible property had occurred. The destruction of a stack of currency could certainly be considered a destruction of tangible property. The moment it is destroyed an irreversible loss of wealth has occurred. The destruction or loss of a check or other debt instrument is a different matter. In *Travelers Indemnity Co. v. State*, 140 Ariz. 194, 680 P.2d 1255 (Ariz.App. 1984), depositors sued the state of Arizona for failing to supervise their failed thrift institution. In holding that the loss of their investments did not amount to "property damage" as defined by an insuring agreement identical to the one at issue in the instant case, the court analogized the investment certificates to a deposit of funds with a bank.

The deposit of funds creates a debtor-creditor relationship between the bank and the depositor. *E.g., Valley Nat. Bank v. Electrical District No. 4, Pinal County*, 90 Ariz. 306, 367 P.2d 655 (1961). A credit is a chose in action, *e.g., Eric v. Walsh*, 135 Conn. 85, 61 A.2d 1 (1948), and a chose in

---

1. *See* Security's brief at p. 6 and Aetna's brief at p. 14.

action is intangible property. 73 C.J.S. Property s 22 at 199 (1983). We find the state's argument, that the investors' property is tangible because it is represented by an investment certificate, to be specious. There is neither injury to, nor destruction of, the investment certificate. Further, there is neither injury to, nor destruction of, the actual money invested. There is only the loss of the investment. *Id.* 680 P.2d at 1257.

Although coverage under section (2) of the property damage portion of the Aetna policy does not require that property actually be destroyed, it must be *capable* of being destroyed or it is not "tangible property." Even as the destruction of an investment certificate does not destroy the intangible interest investment certificate does not destroy the intangible interest it represents, so too the destruction of a check does not destroy the "money" it represents. If a check is destroyed, the credit balance that check represents does not magically disappear as a result. Because the payments tendered by the buyers were actually credit instruments and not currency, and because they could not be physically destroyed, the escrow payments were *intangible* property, not tangible property. Because only tangible property is covered under the terms of the policy's property damage clause, no "property damage" occurred when Security breached the terms of the escrow agreement.

### 4. *Occurrence*

██ "Occurrence" is defined under the policy as:

an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured.**

When Security asked Aetna to provide it with a defense against the Schmidt claim, Aetna refused to do so on the grounds there had been no unintentional accident and, therefore, no "occurrence" as defined by the policy.[2] Though a strict reading of the policy language itself would tend to suggest that an

occurrence must be "accidental" *and* produce an outcome neither expected nor intended from the standpoint of the insured, the Kansas Supreme Court has interpreted this clause to provide coverage for an unintended result even if the act which produced the result was intentional. *See United States Fidelity & Guaranty Co. v. Morrison Grain Co.*, 734 F.Supp. 437 (D.Kan.1990) (citing *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403, 407 (1973)).

Security also argues it had valid objections to the form of the payments tendered by the buyers of the stock and justifiably refused to accept the tenders. However, as Security acknowledges in its own brief, its function as escrow agent was "as a depository only." Security Brief in Support at p. 9; Defendant's Exhibit 1 (the Escrow Agreement) at ¶ 8(a). Security was not liable (and therefore not responsible) for "the sufficiency or accuracy of the form, execution or validity of documents deposited" under the Agreement. Defendant's Exhibit 1 at ¶ 8(a). Security was explicitly authorized to "rely upon any paper, document or other writing believed by it to be authentic" in making any transfer of stock or money. Defendant's Exhibit 1 at ¶ 8(b).

Under the escrow agreement, Security could reject the buyers' payment if Security believed the payment vehicle to be a forgery of some sort. The reasons given by Security for rejecting the payments from the buyers have nothing to do with the authenticity of the payments and were therefore illegitimate rejections of the tender. Security intentionally rejected the buyers' tenders on grounds outside its authority as outlined by the escrow agreement. As a result, the escrow and purchase agreements were breached and the stock sale fell through. Security has not even alleged that it asked the buyers to correct their "defective" tenders at the time they rejected them. Security only mentions in its brief that it would have been reasonable for Security to expect that the buyers' response would be to simply correct the "de-

---

2. Actna's other reasons for refusing coverage were that no loss of "tangible property" had occurred and because the exclusion for safekeeping of property applied.

fects" in their tenders. Whether Security intended the results of its decision to reject the buyers' tenders is a question of fact on which the record is insufficient for the Court to make a determination. In any event, the issue is purely academic as no "property damage" occurred.

### Conclusion

The Court concludes that: 1) the language of the property damage clause of the insuring agreement is clear and unambiguous; 2) escrow payments made by check are not tangible property; and 3) the loss of the use of escrow payments wrongfully withheld by an escrow agent does not constitute property damage as contemplated by the parties to the insurance agreement. Because the Schmidts' action was "wholly outside any coverage obligations assumed in the policy," Aetna had no duty to defend Security against the Schmidt claim and no duty to indemnify Security for the settlement it entered into with the Schmidts.

IT IS THEREFORE ORDERED that the motion for summary judgment of Aetna Casualty and Surety Company (Doc. # 26) be and hereby is sustained, and that the cross-motion for summary judgment of Security State Bank of Kansas City (Doc. # 29) be and hereby is overruled.