The **HOME INDEMNITY COMPANY,** Plaintiff,

v.

**HYPLAINS BEEF, L.C.,** Defendant.

No. 94–2340–JWL.

United States District Court, D. Kansas.

July 31, 1995.

Kent M. Bevan, Jacqueline L. Mixon, Dysart, Taylor, Penner, Lay & Lewandowski, P.C., Kansas City, MO, for plaintiff.

Louis A. Huber, III, Peter S. DeLanoit, Bryan Cave, L.L.P., Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves a declaratory judgment action brought by plaintiff The Home Indemnity Company against defendant Hyplains Beef, L.C. ("Hyplains"). In its declaratory judgment action, plaintiff seeks a ruling from this court that a claimed loss by defendant is not covered under its policy of insurance and that plaintiff has no obligation to defendant as a result of this claimed loss under the terms and conditions of the subject policy of insurance. Defendant has brought a counterclaim for breach of contract in which defendant contends plaintiff breached its obligations under the terms of the policy of insurance. Defendant seeks in excess of $2.5 million in damages.

This matter is currently before the court on plaintiff's motion for summary judgment (Doc. # 48). For the reasons set forth below, the court finds that plaintiff is entitled to summary judgment on its declaratory judgment action. Accordingly, plaintiff's motion for summary judgment is granted and, as a result, defendant's counterclaim is dismissed.

### II. Factual Background

Plaintiff is an insurance company authorized to do business in the state of Kansas.

Defendant is a beef packing plant and cattle feed lot located in Dodge City, Kansas. Plaintiff issued insurance policy number PPMF7117740 (the "Policy") to defendant. The Policy provided coverage for the period July 13, 1993 through July 13, 1994, and was a renewal of a policy previously issued to defendant. The Policy provided insurance coverage for risks associated with commercial crime, commercial inland marine and commercial property. The Policy also contained a section which provided coverage for a loss of business income resulting from a suspension of defendant's operations occasioned by a direct physical loss of or damage to property.

Defendant's operation consists of the purchase, slaughter and processing of cattle for the wholesale market. Defendant's Dodge City, Kansas plant was renovated in 1993. The renovation included, among other things, the installation of a fabrication floor which enabled defendant to further process carcasses into various cuts of meat. Prior to renovating its plant, defendant negotiated with Total Electric Control Systems, Inc. ("TEC") for the development and installation of a computer system for its fabrication floor. The computer system was to utilize programmable logic controllers ("PLCs") and personal computers ("PCs"). TEC was responsible for all data collection and programming for the PCs. The computer system was designed to collect electronic data and create records from the fabrication and sortation areas relating to inventory. TEC was to complete the computer system by August 17, 1993.

Beginning on August 17, 1993, when defendant commenced its fabrication operations, the computer system did not work properly. Defendant was immediately aware that the system was not operating properly. The computer system hardware suffered no physical damage. Defendant continued to operate to the best of its ability, and continued fabrication operations, despite the failure of the computer system to retain its electronic data.

From August 17, 1993 through October 29, 1993, TEC unsuccessfully attempted to correct the problems with the computer system.

On October 29, 1993 Hyplains dismissed TEC from the computer system project and retained Greenway Electric, Inc., which was able to successfully complete work on the computer system.

Hyplains notified Marsh & McClennan, its insurance broker, of its loss on or about November 17, 1993. Plaintiff was given notice of Hyplains' loss by Marsh & McClennan on November 19, 1993. On January 24, 1994, Hyplains submitted a proof of loss to plaintiff claiming a loss of business income in the amount of $2,061,000.

## III. Summary Judgment Standards

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1476 (10th Cir.1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States*, 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R. Co.*, 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

*IV. Discussion*

▇ Hyplains' insurance claim is for loss of business income, coverage for which is set forth in the Policy under a section entitled "Business Income Coverage Form (and Extra Expense)." Section A of that form, entitled "Coverage," provides as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations"[1] during the "period of restoration."[2] The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations ... caused by or resulting from any Covered Cause of Loss.

Hyplains makes a somewhat novel argument as to its entitlement to coverage under the Business Income portion of the Policy. Hyplains contends that the PLCs, located on the fabrication floor, were properly collecting and storing data but that this data was not able to be retrieved by the PCs in any sort of usable form. Thus, Hyplains contends that it suffered a "direct physical loss" of the electronic data that had been collected by the PLCs but was unable to be retrieved by the PCs, triggering coverage under the Policy. Hyplains further contends that due to the loss of this information it was unable to maximize the cuts of its meat, resulting in lower than normal carcass yields; it could not accurately track its inventory and thus was forced to manifest shipments of box beef by hand which resulted in inventory being held longer than desired; and that its salesmen were reluctant to take orders from new and existing customers out of a concern that Hyplains might not be able to timely fill those orders.

Hyplains' claim for lost business income arising from an alleged loss of electronic data raises several interesting questions. Among these are whether there could in fact be a "direct physical loss" to the electronic data which was allegedly collected but never existed in a tangible form. Also, because the electronic data never existed in a usable form, was it in fact lost or rather did it never come into existence? While these questions are intriguing, the court finds that it is not necessary to address them here because Hyplains is clearly not entitled to coverage because there was never a "necessary suspension" of its operations as required by the policy.

The construction of an insurance contract is a question of law. *City of Salina, Kan. v. Maryland Cas. Co.,* 856 F.Supp. 1467, 1475 (D.Kan.1994); *Wing Mah v. United States Fire Ins. Co.,* 218 Kan. 583, 545 P.2d 366, 369 (1976).[3] If the relevant facts are admitted, the court may decide whether they come within the terms of the contract. *City of Salina,* 856 F.Supp. at 1475; *Wing Mah,* 545 P.2d at 369.

An insurance contract, like any other contract, must, if possible, be construed so as to give effect to the parties' intent. *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.,* 768 F.Supp. 1463, 1467 (D.Kan.1991); *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 840 P.2d 456, 459 (1992); *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.,* 248 Kan. 657, 810 P.2d 283, 286 (1991). This is to be accomplished by considering the policy as a whole and taking into account the circumstances of the parties. *Coleman Co., Inc. v. California Union Ins. Co.,* 960 F.2d 1529, 1532 (10th Cir.1992); *Reynolds v. S & D Foods, Inc.,* 822 F.Supp. 705, 707 (D.Kan.1993). Where an insurance contract is unambiguous, the court must enforce the contract as made and not make another contract for the parties. *City of Salina,* 856 F.Supp. at 1475; *Catholic Diocese of Dodge City,* 840 P.2d at 459. The court must take unambiguous language in its

---

**1.** "Operations" is defined in section G as "[y]our business activities occurring at the described premises."

**2.** "Period of restoration" is defined under Section G as "the period of time that:

    a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

    b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."

**3.** There is no dispute between the parties that Kansas law controls in this diversity action.

plain, ordinary, and popular sense. *Wing Mah*, 545 P.2d at 369 (*quoting Bramlett v. State Farm Mut. Auto Ins. Co.*, 205 Kan. 128, 468 P.2d 157 (1970)). Where there is no ambiguity, there is no need for either judicial interpretation or the application of liberal rules of construction. *American Media, Inc. v. Home Indem. Co.*, 232 Kan. 737, 658 P.2d 1015, 1019 (1983). That is, the court must enforce an unambiguous contract according to its terms. *Id.* Like any contract, an insurance contract may be ambiguous. However, the court should not strain to create an ambiguity where, in common sense, none exists. *Miner v. Farm Bureau Mut. Ins. Co., Inc.*, 17 Kan.App.2d 598, 841 P.2d 1093, 1105 (1992) (noting that "[i]t [is] not a function of the trial court to create an ambiguity requiring an interpretation favorable to the insured when no ambiguity exist[s]"); *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan.App.2d 791, 816 P.2d 407, 409 (1991) (noting that the court should not strain to create ambiguity).

■ In order for business income coverage to apply, the Policy requires that there be a "necessary suspension" of operations. This term is not defined in the policy. However, the fact that a policy does not define each term used within it does not somehow make the undefined term ambiguous. *See Security State Bank of Kansas City v. Aetna Cas. & Sur. Co.*, 825 F.Supp. 944, 947 (D.Kan.1993). The court must take unambiguous language in its plain, ordinary and popular sense. *City of Salina*, 856 F.Supp. at 1475. Ambiguity arises only if the language at issue is subject to two or more reasonable interpretations and its proper meaning is uncertain. *Security State Bank*, 825 F.Supp. at 946.

Webster's Third New International Dictionary defines "suspension" as "the act of suspending or the state or period of being suspended, interrupted, or abrogated." "Suspended" is defined as "temporarily debarred, inactive, inoperative." These definitions comport with what appears to be the common understanding of the term "suspension", that is, that it connotes a temporary, but complete, cessation of activity. Thus, if one were to apply the plain, ordinary meaning to the use of the phrase "necessary suspension"

within the policy, in order for a claim to fall within the coverage provision it would require that any direct physical loss of or damage to property result in the cessation of Hyplains' operations. Further, in looking at the policy as a whole, the court does not find any other provisions that would indicate that the use of the phrase "necessary suspension" in the coverage provision should be given anything other than its common, ordinary meaning.

■ Hyplains contends that the failure of the computer system to work properly and the alleged loss of its electronic data prohibited it from effectively managing its quality control functions; caused it to be unable to maximize the cuts of its meat; caused it to be unable to accurately track its inventory; caused it to inadvertently hold inventory longer than desired; and caused its salesmen to be reluctant to take orders from new and existing customers out of a concern that Hyplains may not be able to timely fill its orders. Admittedly, all these results caused the Hyplains plant to operate in a less efficient manner than it would have if the computer system had operated properly. However, the policy does not provide coverage for a slowdown or reduction in operations, rather it requires a "necessary suspension" of operations. Hyplains does not controvert the fact that its fabrication operations continued throughout the period that the computer difficulties existed, albeit at a reduced level of efficiency from what normal operations would have been. The insured has the burden of showing a claim falls within policy coverage. *Security State Bank*, 825 F.Supp. at 946; *Clark Equipment Co. v. Hartford Acc. & Indem. Co.*, 227 Kan. 489, 608 P.2d 903 (1980). In the present case, Hyplains has showed at most that the alleged loss of its electronic data caused its operations to slow and become less efficient. Because Hyplains has failed to show that the alleged loss of its electronic data caused a "necessary suspension" of its operations, as required by the policy language, the court finds that Hyplains is not entitled to coverage under the policy.

The court's holding here, that a complete cessation of Hyplains' business was required

to trigger coverage under the Business Income coverage provision, is consistent with the vast majority of cases from other jurisdictions that have examined the question of what constitutes a "suspension" or "interruption" of operations for the purposes of business interruption insurance. *See Keetch v. Mutual of Enumclaw Ins. Co.,* 66 Wash.App. 208, 831 P.2d 784 (Wash.App.Div. 3, 1992) (damage from volcanic eruption causing a reduction in business at motel not a suspension of business activity); *Hotel Properties, Inc. v. Heritage Ins. Co. of America,* 456 So.2d 1249 (Fla.App. 3 Dist., 1984) (diminution in business of hotel caused by closing of restaurant due to fire did not constitute interruption of business within policies in question); *Howard Stores Corp. v. Foremost Ins. Co.,* 82 A.D.2d 398, 441 N.Y.S.2d 674 (N.Y.A.D. 1 Dept., 1981) *aff'd* 56 N.Y.2d 991, 453 N.Y.S.2d 682, 439 N.E.2d 397 (1982) (recovery denied for water damage to business where there was no actual suspension of business but rather an alleged adverse effect on continuing sales); *Pacific Coast Engineering Co. v. St. Paul Fire & Marine Ins. Co.,* 9 Cal.App.3d 270, 88 Cal.Rptr. 122 (Cal. App. 1 Dist., 1970) (purpose of Business Interruption Insurance is to indemnify for loss due to inability to continue to use specified premises); *Rothenberg v. Liberty Mutual Ins. Co.,* 115 Ga.App. 26, 153 S.E.2d 447 (1967) (recovery under business interruption policy denied where theft of merchandise resulted in loss of business, court held that insured had not suffered an interruption in business but rather a diminution in volume).

Hyplains contends that it is not necessary for it to totally cease its operations in order to have a "suspension" of its operations under the Policy. In support of this argument, Hyplains cites the case of *Studley Box and Lumber Co. v. National Fire Ins. Co.,* 85 N.H. 96, 154 A. 337 (1931). In *Studley,* a fire in a stable burned some of the horses which were used in the operation of a lumber plant. Without the horses, the plant was unable to continue its operations. The *Studley* court formulated the concept of mutual dependency and held that the insured would be compensated for the partial suspension of its business.

The court finds that the mutual dependency theory articulated by the court in *Studley,* even if it were to be adopted in Kansas, is not applicable to the present case. This case does not present a situation like *Studley,* where fire in one building caused an actual cessation of operations in another building. Instead, the alleged loss of electronic data caused decreased efficiency in the fabrication operations at Hyplains' plant. This type of loss is not covered by the Policy for the reasons set forth above. Further, the policy in *Studley* expressly provided coverage for a "partial suspension" of business operations, which coverage is not included in the policy here. Thus, a consideration of *Studley* does not alter the result in this case.

■ Although not addressed by either party in their motions, the court believes there is one other potential argument in support of coverage for the defendant that should be touched on, in passing, and rejected. It is rooted in the relationship between the suspension language and that found elsewhere in the loss of business income coverage. The Policy contains the following language in § D, which is entitled "Loss Provisions:"

4. Loss Determination

c. Resumption of Operations

We will reduce the amount of your:

(1) Business income loss, other than extra expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

In *American Medical Imaging Corp. v. St. Paul Fire and Marine Ins. Co.,* 949 F.2d 690 (3rd Cir.1991), the court reasoned that with such a mitigation clause in the policy an interpretation requiring a complete cessation of operations would create an inconsistency

within the policy because an insured would have no motivation to continue its business at a reduced level and thus would have no motivation to mitigate its losses. In reversing a summary judgment in favor of the insurer that there had been no suspension under the terms of the policy, the Circuit Court first found that, if one believed the plaintiffs version of the facts, the plaintiff had in fact experienced a brief "necessary suspension" of its business operations on the morning of the fire during the period it took to transfer its operations from its fire-damaged original location to another temporary location and also faced a longer "potential suspension". *Id.* at 692. Thus summary judgment was unwarranted. The court went on to note that the policy contained a provision creating an affirmative duty on the insured to mitigate its losses[4] and that "under the district court's reading, this provision would have imposed upon [plaintiff] a duty, the performance of which would have forfeited its right to recover under the policy." *Id.* at 693.

This court declines to apply that reasoning here. First, it ignores the plain meaning of the language in the Policy. In *American Medical,* as well as the present case, the policies require a "resumption" of operations or "resuming" operations. Webster's Third New International Dictionary defines "resumption" as "the act or fact of taking up again: recommencement." "Recommencement" is defined as "a second or fresh commencement." "Commencement" is defined as "the act of commencing" and "commence" is defined as "to have a beginning: begin, start, originate." Thus, the plain meaning of the word "resumption" in the Policy indicates that for the provision to apply there must have necessarily been a stoppage of operations from which it was necessary to begin anew. If the Policy were to apply in situations like the present case, where an alleged loss caused a slowdown of operations but not a complete stoppage, in order to make sense the Policy should speak of the "continuance" of operations, rather than a "resumption" of operations.

The court also does not agree that the so-called "mitigation" provision creates any internal inconsistency within the Policy. The provision merely means that the insured must endeavor to resume its operations as quickly as possible following the event creating the cessation and if it does not do so the insurer is relieved from paying for the excessive loss. An insured is not "punished" by continuing business at a lower level following an event causing a physical loss or damage because, if in fact the insured is able to continue business following the event, the coverage never applied in the first place.

The court finds that the plain language of the Policy in this case is unambiguous and that it requires a cessation of operations to trigger coverage. Because the uncontroverted facts reveal that no cessation occurred, the insured has no recourse against this insurer for what occurred, even if the other potential issues here were resolved in its favor. As a result, the plaintiff is entitled to a declaratory judgment that it does not owe the defendant for this loss and the defendant's counterclaim must be dismissed.

## V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** plaintiff The Home Indemnity Company's motion for summary judgment (Doc. # 48) is granted and that defendant's counterclaim is also dismissed.

**IT IS SO ORDERED.**

---

4. The provision stated as follows:
   If you can reduce your loss by resuming operations at the covered location or elsewhere by using damaged or undamaged property ... you agree to do so.