(119 App. Div. 410)

### LITE v. FIREMEN'S INS. CO. OF NEWARK, N. J.

(Supreme Court, Appellate Division, First Department. May 17, 1907.)

**1. INSURANCE—CONSTRUCTION OF CONTRACT—AMBIGUOUS EXPRESSIONS.**

In construing an insurance policy, effect should be given to every word and expression, if possible, and if the policy is susceptible of two readings, or is so ambiguously expressed that reasonable men, on reading it, might differ as to its meaning, that reading should be adopted which is most favorable to the insured.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 292, 295.]

**2. SAME—MIXED POLICY.**

A policy undertook to insure "against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding $15,000," and described the subject of insurance as follows: "On the profits of the lease of the" buildings insured. "If said buildings shall be totally destroyed by fire, this company shall pay the whole amount hereby insured," less a certain deduction; "and in case of such damage by fire as shall, without total destruction, render said buildings untenantable, this company shall pay at the rate of $416.66 per month" from the date of the fire to the date when the buildings could be rendered fit for occupancy by due diligence. A fire rendered part of the building uninhabitable. *Held*, that the policy was a mixed one, open as to a partial loss and valued as to a total loss, and that the insured was entitled to recover for loss of profits caused by part of the building being untenantable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1266, 1267.]

McLaughlin, J., dissenting.

Appeal from Trial Term.

Action by David Lite against the Firemen's Insurance Company of Newark, N. J. From a judgment for defendant, plaintiff appeals Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Benjamin Patterson, for appellant.
William D. Murray, for respondent.

SCOTT, J. The plaintiff sues upon a policy of fire insurance purporting to insure him against the loss of profits upon property held by him under lease. The plaintiff leased from Max Raymond and Aaron I. Raisman three adjoining apartment houses in the city of New York for a term of four years and seven months. The houses were so constructed that they comprised 34 suites of apartments, besides several shops. On July 28, 1904, the defendant issued to plaintiff its policy of insurance against fire; such policy being in what is known as the "standard" form, with the particular subject of the insurance described in a typewritten slip attached to the printed form. The policy undertook to insure plaintiff "against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding $15,000." The typewritten slip describing the subject of the insurance read as follows:

"On the profits of the lease of the brick and stone buildings situate Nos. 100, 102, and 104 West 61st street, borough of Manhattan, New York City; said lease having four years seven months to run from August 1, 1904. It is understood and agreed that, if said buildings shall be totally destroyed by fire, this company shall pay the whole amount hereby insured, less a deduction at the rate of $416.66 per month for the time that shall have elapsed between the commencement of this policy and the date of occurrence of said fire; and in case of such damage by fire as shall, without total destruction, render said buildings untenantable, this company shall pay at the rate of $416.66 per month, to be computed from the date of occurrence of said fire to the date which, by due diligence, the said buildings could be repaired and rendered again fit for occupancy and not to be limited by the expiration of this policy; but in no case shall the company be liable for a greater amount than the sum insured, nor for any loss other than that which may arise under said leasehold interest."

On December 11, 1904, a fire occurred which rendered 10 out of 34 apartments uninhabitable for a time, and for the loss of profits resulting therefrom the plaintiff sues. At the close of the plaintiff's case the defendant moved for a dismissal upon the ground that the complaint did not state a cause of action, and upon the further ground that the plaintiff had not proved a cause of action. The court granted the motion generally, without specifying upon which ground it acted.

The defendant strenuously argues that the policy is a valued one, and insures only against a total loss of profits, and that no liability attaches for a merely partial loss, such as the plaintiff suffered. With this contention we are unable to agree. The general rule to be observed in the construction of an insurance policy is that, if possible, effect should be given to every word and expression contained therein, and if the policy be susceptible of two readings, or is so ambiguously expressed that reasonable and intelligent men, on reading it, might honestly differ as to its meaning, that reading must be adopted which is most favorable to the insured. Kratzenstein v. Western Assurance Co., 116 N. Y. 54, 22 N. E. 221, 5 L. R. A. 799. The first clause in the typewritten description of the subject-matter of the insurance, if

read by itself, is certainly broad enough to cover any loss of profits, whether total or partial. It recites that the insurance is "on the profits of the lease," which is very clearly sufficient to cover any loss of profits. The subsequent clauses in the description apply only to cases of a total loss, and as to such total loss the policy is unquestionably a valued one. The true construction of the policy, as we read it, is that it insured against any loss of profits resulting from fire; the amount to be paid in case of a total loss being valued or limited, leaving the amount to be paid in case of a partial loss to be determined by competent proof. That the policy was intended to cover a partial, as well as a total, loss seems to be further indicated by the so-called "80 per cent. average clause," which is stamped upon the face of the policy, and reads as follows:

"This company shall not be liable for a greater proportion of any loss or damage to the property described herein that the sum hereby insured bears to eighty per centum (80%) of the actual cash value of said property at the time such loss shall happen. In case of claim for loss on the property described herein, not exceeding five per cent. (5%) of the maximum amount named in the policies thereon and in force at the time such loss shall happen, no special inventory or appraisement of the undamaged property shall be required."

This clause is applicable only to a partial loss, and would be totally inapplicable if the policy were to be construed to be only a valued policy covering a total loss, and since the clause is stamped upon the policy, and not embraced within the printed terms of the standard form of policy, it must be deemed to have been impressed upon this policy with special reference to the subject insured. It is perfectly competent and not without precedent for a company to issue a mixed policy, open as to one class of loss and valued as to another (Wood on Fire Ins. § 41); and such we consider the present policy to be, open as to a partial loss and valued as to a total loss.

The defendant argues that the policy must be construed as only a valued one, because of the supposed difficulty of estimating the amount which should be paid for a partial loss; and this leads us to consider whether the plaintiff succeeded in proving his loss. It is manifest that some loss of profit must have accrued from the inability to use or rent the 10 apartments, and, where there is an evident loss, the insured should not be deprived of indemnity merely because it may be difficult to fix the amount of the loss with absolute precision. The profit to be derived from such a lease as plaintiff held is measured by the difference between the rentals which he is able to realize from the property, less the rent paid by him, plus the expense of running and maintaining the building. The total loss of rentals during the time the 10 apartments were uninhabitable was claimed to be $969.98. This figure was arrived at by showing what the apartments rented for immediately before the fire (Michael v. Prussian Ins. Co., 171 N. Y. 28, 63 N. E. 810), coupled with proof that the apartments were all rented and occupied at the time of the fire, and were readily rented when the necessary repairs had been made, and with proof that the neighborhood had increased, rather than diminished, in desirability. It is not shown that the cost of maintenance had been decreased by reason of the fire; but

it was shown that pursuant to one of the terms of the lease, the rent paid by plaintiff had been reduced by $390. As the evidence stood, therefore, there was enough to have justified the jury in finding that the plaintiff had sustained a loss of profits to the extent of $579.98. Of course, upon a retrial, other evidence may be introduced, reaching a different result. We are therefore of the opinion that the policy covered a partial loss of profits, as well as a total loss, and that the evidence showed, not only that there had been a loss, but, with reasonable precision, what that loss amounted to.

It follows that the complaint should not have been dismissed, and the judgment appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and HOUGHTON and LAMBERT, JJ., concur

McLAUGHLIN, J. (dissenting). I am unable to concur in the prevailing opinion. The subject-matter of the insurance was the profits which the plaintiff expected to realize under his lease, not exceeding $15,000. These profits were valued at $416.66 per month—an arbitrary sum fixed by the contract. In case the buildings were totally destroyed by fire, the whole amount of the policy became payable, less a deduction of $416.66 per month for the time the policy had been running, and in case they were rendered untenantable, without total destruction, the same amount (not exceeding $1,500) was to be paid for each month until they could, with due diligence, be repaired. This was not merely an agreement valuing the profits in the two contingencies specified, but it was a limitation of the profits insured, be they more or less, and fixing a precise and definite way by which the total amount, in case of loss, was to be ascertained. When the policy was issued the lease had not commenced to run. It could not then be determined whether there would be any profits at all. Under such circumstances, what did the parties intend? The language used in their contract, it seems to me, clearly indicates the profits stated in the policy, and this amount the plaintiff was entitled to recover, irrespective of whether there had been any actual loss or not. There is no provision, as I read the policy, as to a partial loss, but only for the loss of profits, when the buildings were totally destroyed or rendered untenantable. It serves little or no purpose to refer to the other provisions of the policy, because the rider states what is insured, and what, in case of loss, is to be paid. This view is also strengthened when we take into consideration the result which would be accomplished if the policy be construed, as indicated in the prevailing opinion, so as to cover a partial loss. Assume that part of the premises only were rendered untenantable, and that the plaintiff, if the fire had not occurred, would not have made any profits; in that event he could recover nothing. But assume he could show a profit of $15,000 a month on the damaged portion, he would then be entitled to recover that amount, although, if the fire had destroyed all the buildings, he could recover only $416.66 a month. I cannot believe the parties intended to make such a contract, and I do not believe they have. In addition to this, the lease to which

the policy refers provides that the rent, in case of a partial destruction of the buildings by fire, is to be proportionately reduced. Plaintiff, therefore, was protected by his policy. in case of a total destruction of the buildings or their being rendered untenantable, and he also had some protection under his lease in case of a partial destruction.

But, if it be assumed that the policy does cover the case of a partial loss, I am nevertheless of the opinion that the complaint was properly dismissed, for the reason that the plaintiff failed to prove a cause of action. To entitle him to recover he was bound to show a loss of profits under his lease; that is, the profits which he would have made on the rooms which were rendered untenantable intermediate the fire and their being restored to a tenantable condition. This he wholly failed to do. He testified as to what his profits had been for the four months preceding the fire, and also as to the rents he had been receiving from the damaged apartments; but he could not show, even approximately, what his expenses would have been during the time the damaged apartments were unoccupied, had they been occupied. It, however, did appear by his cross-examination that the landlord had made a reduction of $390 in his rent on account of the fire, and there is not a scintilla of evidence to show that this did not fully cover any profits he would have made. The plaintiff's contention is that, since he made a profit for the year as a whole, the loss of rents of the apartments in question was a total loss of profits; but this does not follow. If the apartments which were damaged had been occupied, there would necessarily have been some expense, and there would not have been any profits unless the amount received exceeded such expense, and whether it did or not is a mere matter of conjecture.

Upon the ground, therefore, that the policy does not cover a partial loss, as well as upon the ground that plaintiff failed to prove any loss of profits, I vote for an affirmance of the judgment.