J. Irwin Shapiro, J.
In this action for a declaratory judgment the parties have submitted the issues for determination upon an agreed statement of facts.
Plaintiff owned and operated a retail cleaning and dyeing store. During the week end of August 8 to August 11,1958, the store was broken into and burglarized. Among the garments *478 stolen were eight fur coats that were delivered to the plaintiff by various customers “ for the purpose of storage as well as incidental repairs, and a charge was made [by the plaintiff] with respect to the repair and storage aforementioned.”
The defendant for a premium of $150 issued its policy No. T429381, which by its indorsement insured the plaintiff for the period from January 19, 1958 to January 19, 1959, against loss by “ Burglary, or hold-up, at the premises of the Insured.” The exact language of the pertinent provisions of the policy is as follows:
“ -PROPERTY INSURED-
“ Such insurance as is afforded by this policy applies, subject to all the terms of this endorsement only with respect to all kinds of lawful goods or articles, the property of Insured’s customers, accepted by the Insured for cleaning, renovating, pressing, repairing, dyeing or laundering, while contained in the premises occupied by the Insured at 210-03 Horace Harding Blvd., Bayside and while being transported to and from its customers against direct loss or damage caused by, and only by, the perils specifically insured against.” (Italics ours.)
‘ ‘-EXCLUSIONS —
“ This policy does not insure against (a) loss of or damage to goods or articles held on storage or for which a storage charge is made, except that goods held by the Insured without instructions from the owner to hold on storage shall not be considered to be held on storage.” (Italics ours.)
The defendant investigated the loss and made payment with respect to all of the customers’ garments which had been received solely for “ cleaning, renovating, pressing, repairing, dyeing or laundering,” but denied liability for those goods (the eight fur coats) which it contends were held by the insured “ on storage or for which a storage charge is [had been] made.”
The eight fur garments in question were admittedly received by the plaintiff for the dual purpose ‘ ‘ of storage, as well as incidental repair, and a charge was made with respect to the repair and storage.”
As I read this portion of the policy, it contemplated coverage of customers’ articles under two conditions: (1) where the customers’ goods were ‘ ‘ accepted by the Insured for cleaning, renovating, pressing, repairing, dyeing or laundering ’ ’ and (2) where, after the goods had been given to plaintiff “for cleaning, renovating, pressing, repairing, dyeing or laundering ”, they continued to remain with him solely because the *479 owner failed to call for them as a consequence of which they continued to he ‘ ‘ held by the Insured [but] without instructions from the owner to hold on storage. ’ ’
Specifically excepted from coverage, however, were goods being held by the insured “ on storage ” or as a result of the making of a “ storage charge,” no matter how and for what other and additional purpose they may have come into his possession.
The plaintiff properly contends that an insurer who prepares an insurance policy must have all ambiguities, doubts and uncertainties contained therein resolved against it and in favor of the insured. (Standard Sur. & Cas. Co. v. Maryland Cas. Co., 281 App. Div. 446; Grand Union Co. v. General Acc., Fire & Life Assur. Corp., 254 App. Div. 274; Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44; Berkshire Life Ins. Co. v. Weinig, 290 N. Y. 6; Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305; Greaves v. Public Service Mut. Ins. Co., 5 N Y 2d 120.) This does not mean, however, that in order to find for an insured the court is privileged to disregard or distort language of a policy which is plain and unequivocal, nor is it at liberty, under the guise or pretext of interpretation to restrict the meaning of language which is clear and unequivocal. Language in a policy must be given the meaning which the ordinary person of ordinary intelligence would attribute to it. (Abrams v. Great Amer. Ins. Co., 269 N. Y. 90; Morgan v. Greater New York Taxpayers Mut. Ins. Assn., 305 N. Y. 243.) Thus read — through the eyes of the man in the street — (Lachs v. Fidelity & Gas. Co. of N. Y., 306 N. Y. 357; McGrail v. Equitable Life Assur. Soc., 292 N. Y. 419; Morgan v. Greater New York Taxpayers Mut. Ins. Assn., 305 N. Y. 243, supra), the plaintiff was not covered under this policy for the loss sustained.
It is fairly inferable from the agreed statement of facts — though not specifically spelled out — that the garments had not yet been repaired. Therefore, if the exclusion clause read that ‘1 This policy does not insure against loss of or damage to goods or articles held on storage ” it might perhaps be contended that even if the garments were accepted by the plaintiff for the twofold purpose of being repaired and thereafter stored they were not being ‘ ‘ held on storage ’ ’ until after the repairs had been completed, but that is not this case.
Here the insurer has told the insured, in plainly unmistakable and unequivocal language, that the 11 policy does not insure against * * * loss of or damage to goods or articles * * * for which a storage charge is made ”. It has in effect *480 said to the insured “when you take customers’ property into your store for any purpose and make a ‘ storage charge ’ you are not covered by this insurance policy.”
While we may not, absent ambiguity, concern ourselves with the motivations behind the exception, the reason for such limitation of risk is obvious and understandable. If clothing is given to a tailor solely for renovation or repair, presumably it will be called for by or returned to the customer within a reasonable time. The nature of the service is inherently short term. However, where the garment is left with the tailor for repairs and, in addition, for storage for which the customer has paid a fee, the very nature of the service or bailment is inherently long term. In this case, since we are dealing with fur coats, that storage period, in most cases, would extend over the Summer.
Under such circumstances the risk of the insurer is greatly enlarged and it had the right, if it said so forthrightly, to limit its risk and except from coverage any ease where the property was received by the insured and a storage charge was made. This is such a case.
Though this is apparently a case of first impression, no case in point having been cited to the court by either side, and the court’s independent research not having disclosed any, the conclusion to which the court has come seems inescapable in view of the clarity of the language used by the insurer to exclude the kind of loss here suffered by the plaintiff.
We recognize “ that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company ” and that “ the burden was [is] on the defendant to establish that the words and expressions used not only are susceptible ” of the construction urged by it “ but that it is the only construction that can fairly be placed thereon” (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49, supra); but if the construction here given to the exclusion clause does not have the meaning ascribed to it, then it has no meaning or utility whatever. We may not assume — no matter how generous the interpretation — that the exclusion clause was not intended to have some meaning and purpose.
The parties agree that the plaintiff insured had no adequate facilities for storage at his store and that “ all fur coats left with him for repairs and ultimate storage ” were sent to a storage warehouse. The policy provision covered the insured not only for the articles accepted by him ‘ ‘ for cleaning, renovating, pressing, repairing, dyeing or laundering, while contained in the *481 premises occupied by the Insured at 210-03 Horace Harding Blvd.” but also “ while being transported to and from its customers ”. Thus, the garments in question would in no event be covered under this policy while they were being transported to and from the storage warehouse.
Recognizing this, if we accept coverage under the facts and circumstances of this case, then we could just as well excise the exclusion clause from the policy for it did not in fact exclude anything from coverage therein. The exclusion clause could only come into play and have some effect upon the rights of the parties while plaintiff’s customers’ goods were in his store, otherwise, it was and is completely unnecessary. Looked at in that way, the only reasonable conclusion that can be drawn is that if customers’ goods were turned over to the plaintiff, and a storage charge paid, irrespective of whatever reasons plaintiff may have had for taking the goods into his possession, the policy in question did not cover him under such circumstances for the loss of merchandise.
Judgment is, therefore, directed for the defendant, without costs declaring that the loss suffered by plaintiff in connection with the eight fur garments is not covered by the defendant’s policy of insurance.
This constitutes the decision of the court pursuant to the requirements of section 440 of the Civil Practice Act.
Proceed accordingly on notice.