NATIONAL CHILDREN'S EXPOSITIONS CORPORATION, Plaintiff-Appellant,

v.

ANCHOR INSURANCE COMPANY, Defendant-Appellee.

No. 324, Docket 24766.

United States Court of Appeals Second Circuit.

Argued May 6, 1960.

Decided June 7, 1960.

A. J. Asche, New York City (Nathan, Mannheimer, Asche, Winer & Friedman, New York City, on the brief), for appellant.

Bert Cotton, New York City (Rein, Mound & Cotton and Leonard S. Dome, New York City, on the brief), for appellee.

\* Sitting by designation.

1. In a typewritten rider attached to the policy, appellee insured appellant in the amount of $150,000.00 as follows: "On their use and occupancy value of Grand Central Palace, Lexington Avenue, 46th Street to 47th Street, New York City, covering against fire, lightning, strikers, riot, explosion, falling aircraft, (including part, parts or cargo thereof) collapse, earthquake, water or the elements, but excluding War as specified in the printed form of this policy. In the event of any of the above contingencies arising to prevent the holding of or continuance of the Exposition—'Merry Christmas Land'

Before LUMBARD, Chief Judge, MEDINA, Circuit Judge, and JAMESON, District Judge.\*

**JAMESON, District Judge.**

This is an appeal from a judgment denying recovery on a policy of inland marine insurance, issued by appellee to appellant covering the use and occupancy of Grand Central Palace, New York City, where appellant conducted a children's exposition from December 20, 1947 to December 28, 1947. On December 26, there was an unprecedented snowstorm, which reduced substantially the attendance at the exposition on that and the two succeeding days. Appellant seeks indemnity for the loss resulting from the reduced attendance.

Under the policy, appellee insured appellant's "use and occupancy value" of the premises against (among other contingencies) the "elements," and provided that in the event of such "contingencies arising to prevent the holding of or continuance of" the exposition, appellee "shall indemnify the assured for their actual expenses, monies advanced, obligations assumed and expected profits \* \* \*" 1

The case was submitted on an agreed statement of facts, which recited that the snowstorm "impaired transit facilities in New York City and environs and as a result of the impairment of such transit facilities and the reluctance of parents to take children out doors in such inclement weather," the attendance was

—to be held in said Grand Central Palace, December 20th, 1947 to January 1st, 1948, inclusive, it is understood and agreed that this Company shall indemnify the assured for their actual expenses, monies advanced, obligations assumed and expected profits (said expected profits to be computed upon the same basis as the profits as shown by the assured's books of record for Trade Space Income and Box Office Income) less the aggregate gross income received by the assured or due to the assured, (not including any income which the assured is obligated to return if any of the specified contingencies prevent the holding of or continuance of the show) \* \* \*"

reduced to such an extent that the total loss in receipts from admissions for the three days amounted to $33,069.25.

At no time, including December 26, 27, and 28, was there any physical damage to Grand Central Palace or the premises therein occupied by appellant. At all scheduled times the exposition was open to all customers who appeared, and all persons who came to Grand Central Palace for the purpose of attending the exposition were able to do so. A total of 3567 persons attended on December 26, 2951 on December 27, and 5037 on December 28. The trial court properly found that the operations of the exposition on these dates were "substantial."

Appellant contends that the trial court erred (1) in failing to construe ambiguities in the policy in favor of appellant; (2) in failing to follow the New York case of Lite v. Firemen's Insurance Company, 1st Dept., 119 App.Div. 410, 104 N.Y.S. 434, affirmed 193 N.Y. 639, 86 N.E. 1127, which allows recovery for partial loss; (3) in holding that the policy requires physical damage to the property; and (4) in its construction of the word "prevent" as used in the policy.

■ We find the policy unambiguous. It is accordingly unnecessary to pass upon the first specification of error.[2]

■ Lite v. Firemen's Insurance Company is distinguishable. In that case the policy covered the profits on the lease of a building. The building was partially destroyed by fire, making 10 of the 34 apartments untenantable. The insurer contended that the policy covered only a total, but not a partial loss. The court properly rejected this contention. Had the snowstorm here rendered any

portion of the building unusable and prevented the holding or continuance therein of part of the exposition, the policy would cover any partial loss resulting therefrom. But here no part of the building was made unusable by the snowstorm. The loss did not result from inability to hold the exposition in any part of the insured premises, but solely from a reduction in attendance. We do not hold, nor did Judge Dimock, that the policy, in a proper case, would not cover a partial loss. We do hold that there was no partial loss within the terms of the policy because no part of the insured premises was rendered unusable and appellant was not prevented from holding or continuing the exposition in any part of the premises.

■ Nor do we construe Judge Dimock's opinion as holding that the policy requires physical damage to the property. It is true there might be liability in the absence of actual physical damage. For example, if the snowstorm resulted in a power shut-off which prevented the holding of the exposition in all or a part of the building, there would be a loss within the terms of the policy. But in the absence of some interruption in the use and occupancy of all or part of the building, there can be no recovery.

The decisive question is raised by appellant's fourth specification of error. Did the snowstorm "prevent the holding of or continuance of" the exposition? Appellant argues that it was sufficient to prove that it "was prevented from conducting the exposition in the usual and ordinary manner contemplated, or that it was prevented from doing so in a substantial degree." In effect, appellant contends that if the successful operation

2. The typewritten rider was prepared by appellant's broker. We need not consider whether this would affect the general rule that where an insurer prepares the policy, all ambiguities, doubts and uncertainties must be resolved against it. The rule here applicable was well stated in Sapolin v. American Employers' Ins. Co., 1959, 21 Misc.2d 477, 195 N.Y.S.2d 64, 66, where the Court said: "(after referring to the general rule) * * * This does

not mean, however, that in order to find for an insured the court is privileged to disregard or distort language of a policy which is plain and unequivocal, nor is it at liberty, under the guise or pretext of interpretation to restrict the meaning of language which is clear and unequivocal. Language in a policy must be given the meaning which the ordinary person of ordinary intelligence would attribute to it."

of the exposition is affected by a reduction in attendance traceable to one of the contingencies specified in the policy, it may recover for the partial loss resulting therefrom. The policy does not so provide. The policy insured the use and occupancy of the premises. There can be no recovery in the absence of some interruption in this use and occupancy by reason of one of the contingencies preventing the "holding of or continuance of" the exposition.

Appellant is not aided by its argument that the word "prevent" means "hinder." It is true, as appellant contends, that "prevent" is sometimes used as a synonym for "hinder," and both words are sometimes used as synonyms for "thwart," "retard" or "obstruct." Both words are also used as synonyms for "stop." But the word "prevent" may not be taken out of context in determining its meaning. It must be construed with the critical words "holding" and "continuance." Construed with these words its meaning is clear. As Judge Dimock so well expressed it: "* * * (W)hat is to be prevented is 'the holding of or continuance of' the exposition,[3] not the operation of the exposition. These words 'holding of or continuance of' are words of existence, not words of action."

The exposition is either held or it is not held. If the exposition, or some part thereof, is not held and is prevented from being held by one of the contingencies, the insured is entitled to indemnity for the resulting loss. It is not entitled to indemnity for loss resulting from "impairment of * * * transit facilities and the reluctance of parents to take children out of doors in * * * inclement weather." It is the holding or continuance of the exposition which must be prevented to permit recovery. Here, however, the snowstorm did not interrupt the use and occupancy of any part of the premises. The exposition was in fact held by the assured and its exhibitors at all times covered by the policy, including the three days for which recovery is sought. The trial court properly denied recovery.

Judgment affirmed.

---

3. As Judge Dimock has pointed out, the meaning of this phrase is clarified further by its repetition in the clause excluding from computation "any income which the assured is obligated to return if any of the specified contingencies prevents the holding of or continuance of the show." (See Note 1.) The income consists of "trade space income" and "box office income." With respect to trade space income, it seems clear that in any agreement between appellant and its exhibitors, the parties contemplated that any moneys already received would have to be returned only if appellant was unable to perform (hold the exposition), and not for the exhibitor's loss of patronage in the operation of its booth, caused by bad weather. With respect to box office income, appellant would be obligated to return moneys received from advance sales only in the event the exposition was not "held,"—not because of the ticket holders' inability to attend the show.