LIBERTY MUTUAL INSURANCE CO. *v.* SEXTON
FOODS CO., INC.

CA 92-941                                    854 S.W.2d 365

Court of Appeals of Arkansas
Division II
Opinion delivered June 2, 1993
[Rehearing denied July 7, 1993.]

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.* and *T. Wesley Holmes*, for appellant.

*Boyett, Morgan, Millard & Killough, P.A.*, by: *Comer Boyett, Jr.*, for appellee.

JUDITH ROGERS, Judge. Liberty Mutual Insurance Company [hereinafter "Liberty"] appeals from a judgment declaring that it owed appellee, Sexton Foods Company, Inc., an additional $16,948.36 for a fire loss under a policy of insurance. For reversal, Liberty contends that appellee is not entitled to any recovery under the loss of earnings endorsement contained in the policy; that the total amount appellee was owed under the contents provision of the policy was $169,332.51; and, that it is entitled to restitution for an overpayment in the amount of $36,653.39. We find sufficient merit in the first point raised such that we reverse and remand for the taking of additional evidence.

Liberty issued a multi-peril policy to appellee covering several grocery stores operated by Charles Sexton. On November 19, 1986, a fire destroyed the store located in England, Arkansas. Liberty honored the claim and on December 16, 1986, it paid appellee an advance of $40,000. In July of 1987, Liberty paid appellee an additional sum of $165,985.90. Liberty thereafter filed a complaint in chancery court claiming that it had overpaid appellee because it had failed to take into account the advance payment of $40,000 when it made the July 1987 disbursement. Liberty thus sought restitution for the amount of the alleged overpayment. In response, appellee disputed this allegation and filed a counterclaim in which it contended that the payments it had received were actually less than the amount it was due under the policy.

After a trial, the chancellor found in favor of appellee on its counterclaim. In his letter opinion, the chancellor recognized that Liberty had paid out a total of $202,985.90, as the sum of the advancement and the July 1987 payment. The chancellor found, however, that appellee was owed $172,400 under the contents provision of the policy and an additional $50,534.26 under the loss of earnings endorsement for a total of $222,934.26. The chancellor thus awarded appellee judgment for $16,948.36,

representing the difference between the amount that Liberty had paid and what he determined that appellee was entitled to receive under the policy.

As its first issue, Liberty contends that the chancellor erred in allowing appellee to recover under the loss of earnings endorsement. The "Loss of Business Earnings Endorsement" in question provides in pertinent part as follows:

> 1. Subject to all the provisions applicable to Section 1 of this policy, except the Coinsurance Clause and the Deductible Clause, this policy is extended to insure against loss of earnings resulting directly from necessary interruption of business caused by the perils insured against damaging or destroying, during the policy period, real or personal property (except finished stock) at the premises described in this endorsement, subject to the limit of liability specified above for the premises at which the damage or destruction occurs.
>
> 2. The company shall be liable for:
>
> a. The actual loss sustained by the insured resulting directly from necessary interruption of business, but not exceeding the reduction in earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy. Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss.
>
> 5. Definitions:
>
> a. For the purpose of this insurance, "earnings" are defined as net profit, plus payroll expense, taxes, interest, rents and all other operating expenses earned by the business.

Liberty argues that no recovery could be had under this endorsement in light of the testimony that the grocery store was operating at a net loss when the fire occurred. We agree with Liberty's argument to the extent of finding that the chancellor erred in failing to consider this as a factor in calculating the business interruption loss under the endorsement.

■ It has been said that the purpose of business interruption insurance is to protect the prospective earnings of the insured business only to the extent to that which the business would have earned had no interruption occurred. *Associated Photographers, Inc.. v. Aetna Casualty & Surety Co.*, 677 F.2d 1251 (8th Cir. 1982). While the policy is aimed at protecting the insured, it is also designed to prevent the insured from being placed in a *better* position than if no loss or interruption of the business had occurred. *United Land Investors, Inc. v. Northern Ins. Co. of America*, 476 So.2d 432 (La. Ct. App. 1985).

■ In determining the loss of earnings here, the chancellor's computation included only the sum of appellee's continuing business expenses (i.e. payroll expense, taxes, interest, rents, etc.) without regard to its net profit, which was said to have been at a loss. The endorsement, however, provides that appellee was to be compensated for the "actual loss resulting directly from necessary interruption of business, but not exceeding the reduction in earnings less charges and expenses which do not necessarily continue during the interruption of business." Furthermore, the term "earnings" is defined as "net profit plus payroll expense, taxes, interest, rents and all other operating expenses earned by the business." It is apparent from the wording of the endorsement that in determining the business's actual loss consideration must be given to net profit since the business's "earnings" are specified as being the sum of the net profit and the ongoing expenses incurred by the business after sustaining the loss. We thus find that the chancellor erred by not considering appellee's net profit in computing the amount of loss. Simply stated, the proper way to calculate the amount due under this provision is to reduce the sum of the net profit and continuing expenses by the amount of non-continuing expenses. *See Associated Photographers, Inc. v. Aetna Casualty & Surety Co., supra.*

■ We reject, however, Liberty's contention that recovery

is completely barred in the event that a business is not operating at a profit. Neither the language of the provision nor the authorities Liberty cites support this position. In *Continental Ins. Co. v. DNE Corp.*, 834 S.W.2d 930 (Tenn. 1992), the Tennessee Supreme Court had occasion to interpret a provision similar to the one at issue here. To assess the amount of loss, the court stated:

> We therefore conclude that the amount of "business income" under the insurance policy provision involved in this case should be determined by adding the amount of "net income" and the amount of "continuing normal operating expenses." Under this approach, if "net income" is a positive number (which will occur whenever there are net profits), the amount of "business income" will be the sum of two positive numbers, and the insured will be entitled to recover that amount. If, however, "net income" is a negative number (which will occur whenever there is a net loss), the amount of "business income" will be the amount of "continuing normal operating expenses" reduced by the amount of the net loss. If, as under the facts of this case, the amount of the net loss that would have been incurred had there been no business interruption *exceeds* the amount of the normal operating expenses actually incurred, the resulting number is a negative number, and there can be no recovery for an "actual loss of business income."

*Id.* at 934. As demonstrated by this holding, recovery might be had even though the business is operating at a loss if the result of the equation yields a positive number.

■ Here, there was testimony that an audit of the business revealed that it was operating at a net loss. The amount of the loss, however, was not specified, nor was there any mention made of the business's non-continuing expenses. We hear equity cases *de novo* on the record made below, and ordinarily dispose of such cases on that record. However, if the record is not sufficient for us to dispose of the case, we have the discretionary authority to remand an equity case for further proceedings. *Sullivan v. Edens*, 304 Ark. 133, 801 S.W.2d 32 (1990). On the record before us, we are unable to calculate the loss of business earnings; therefore, we

remand this case to the chancery court for the taking of additional evidence on this point and for the chancellor to determine the amount of loss, if any, in a manner consistent with this opinion.

■ Liberty's next argument focuses on the amount of recovery under the contents provisions of the policy. As noted above, the chancellor determined that $172,400 was owed for the inventory that was lost in the fire. In its brief, Liberty goes through a series of calculations to arrive at a figure of $169,332.51, which it contends that appellee is entitled to receive. It then points out that the chancellor correctly utilized the same methodology in calculating the amount of loss, but that the only difference is that the chancellor "erroneously determined that the policy covered certain inventory for which Sexton did not make a claim in its proof of loss." This quoted statement is the extent of Liberty's argument on appeal. While Liberty makes this bald assertion, it has failed to offer any argument whatsoever in support of its contention. Points of error which are unsupported by convincing argument or authority will not be considered on appeal. *Roe* v. *Dietrich*, 310 Ark. 54, 835 S.W.2d 289 (1992). Consequently, we affirm the chancellor's finding on this issue.

As its last argument, Liberty contends that it is entitled to restitution for the amount it claims to have overpaid appellee. Since recovery under the loss of business earnings endorsement is yet to be determined, it would be premature for us to address this issue.

Reversed and Remanded.

PITTMAN and ROBBINS, JJ., agree.