**ROYAL INDEMNITY INSURANCE CO., Plaintiff,**

v.

**MIKOB PROPERTIES, INC. d/b/a Balboa Apartments, Defendant.**

Civil Action No. H–95–1245.

United States District Court,
S.D. Texas,
Houston Division.

April 24, 1996.

Jay W. Brown, Beirne Maynard & Parsons, Houston, TX, for plaintiff.

Heather A. Campbell, Coastal Corporation, Houston, TX, Arthur Thomas Kajander, Sharpe & Kajander, Houston, TX, Mark A. Huvard, Harberg & Huvard, Houston, TX, for Mikob Properties Inc.

Mark A. Huvard, Harberg & Huvard, Houston, TX, for Balboa Apartments.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Pending before this court in this insurance coverage dispute are cross-motions for partial summary judgment filed by plaintiff Royal Indemnity Insurance Co. (Docket Entry No. 30) and defendant Mikob Properties, Inc. D/B/A Balboa Apartments (Docket Entry No. 27). Based on the pleadings, motions, submissions, and applicable law, this court DENIES defendant's motion and GRANTS plaintiff's motion, for the reasons stated below.

### I. Background

Defendant Mikob Properties, Inc. D/B/A Balboa Apartments ("Mikob") owns and manages an apartment complex containing three separate apartment buildings. The complex is located in Nassau Bay, Harris County, Texas. On February 19, 1995, a fire completely destroyed one of the three apartment buildings, Building C. The two other apartment buildings, Buildings A and B, had only minor damage.

After the fire, Mikob erected a fence around what remained of Building C and the surrounding area. When asbestos was discovered in the soot from the fire, the Texas Health Department insisted that Building C remain fenced off until the building could be demolished and the area around it cleaned. Since the fire, tenants have been unable to use amenities located near Building C, including a lighted boardwalk, a lighted fishing pier, a boat ramp, a picnic area, and a parking area previously used by Building B tenants. (Docket Entry No. 29, Affidavit of Allan Klein, vice president of Mikob, Exhibit B). Mikob asserts that these amenities con-

tributed to the overall appeal of the complex as a waterfront community.

Before the fire, the apartment complex was 94.29 percent occupied. Since the fire, no unit in Building C has been habitable and the building has been vacant. It is undisputed that every unit in Buildings A and B remained habitable. However, the occupancy rates of Buildings A and B have decreased. The occupancy rate for Building A was 96.92 percent in the month before the fire; after the fire, the rate ranged from 64.23 percent to 73.08 percent over a seven-month period. The occupancy rate of Building B was 88.14 percent in the month before the fire; after the fire, the rate ranged from 38.14 percent to 61.02 percent.

The parties have stipulated that the occupancy rates declined because many tenants voluntarily vacated Buildings A and B after the fire.[1] After Mikob "dramatically reduced" rental rates, the occupancy rate rose to nearly 90 percent by October 1995 for Building A, but the occupancy rate for Building B has remained "low." (Docket Entry No. 28, pp. 3–4; Docket Entry No. 29, Klein Affidavit).

At the time of the fire, Mikob had a commercial property insurance policy, No. RTN43662–21 (the "Policy"), issued by Royal Indemnity Insurance Co. ("Royal"). The Policy contains a business interruption, or business income, provision, which states as follows:

> [Royal] will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" or of tenancy during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at or within 500 feet of insured premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

"Business Income" is defined as net income, including "rents" that would have been earned or incurred and continuing normal operating expenses, such as payroll.

The Policy also provides that:

> [Royal] will pay any "Extra Expense" to avoid or minimize the suspension of business and to continue "operations."

After the fire, Royal paid Mikob the rental income lost because Building C closed. Mikob demands that Royal also pay the decrease in rental income from Buildings A and B. Royal asserts that the Policy does not cover loss of rental income resulting from a reduction in tenant occupancy in buildings not physically damaged by or closed after the fire. (Docket Entry No. 29, Exhibit E). Royal asserts that although some tenants voluntarily left Buildings A and B, this does not amount to a "necessary suspension of operations or tenancy" in those buildings required for coverage under the Policy.

Mikob argues that the fire damaged the quality of life at the complex as a whole and that tenants vacated Buildings A and B as a result. Mikob argues that its inability to rent the apartments at the pre-fire rental rates and occupancy levels constitutes a "necessary suspension of operations or tenancy" covered by the business interruption provision.

Mikob bases its argument on the theory of "mutual dependency." Royal argues that Texas has not adopted the theory of mutual dependency, and that even if this theory were applied, it would not lead to coverage for Mikob's decrease in rental income in Buildings A and B.

The parties have agreed to resolve the coverage issue by cross-motions for summary judgment and have stipulated to the facts necessary to resolve the motions.

## II. Discussion

### A. The Legal Standard

Under Texas law, insurance policies are contracts and are controlled by the rules of

---

1. Royal asserts that tenants chose to move out after the fire "presumably as a result of rampant rumors and immediate widespread publicity ... regarding previous fires ..., numerous fire code violations, and the questionable safety of the [apartment] complex (Docket Entry No. 30, p. 4)." "It is clear that tenant flight from Buildings A and B was the result of factors unrelated to any suspension of operations/tenancy (which, as stipulated, never occurred)." (Id., p. 5). Mikob argues that the tenants moved out due to the decreased value and appeal of the complex from the suspension of the amenities resulting from the fire. However, the parties agree that the tenants moved out after, and in response to, the fire.

construction applicable to contracts generally. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). If the policy is worded so that it can be given only one reasonable construction, it will be enforced as written. *Id.; U.S. Fire Ins. Co. v. Confederate Air Force*, 16 F.3d 88 (5th Cir.1994); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

## B. *The Theory of Mutual Dependency*

■ The purpose of a business interruption clause is to preserve the continuity of the insured's earnings. *Cora Pub, Inc. v. Continental Cas. Co.*, 619 F.2d 482, 487 (5th Cir.1980), *Keetch v. Mutual of Enumclaw Ins. Co.*, 66 Wash.App. 208, 831 P.2d 784 (1992); *Liberty Mut. Ins. Co. v. Sexton Foods Co., Inc.*, 42 Ark.App. 102, 854 S.W.2d 365 (1993); *Continental Ins. Co. v. DNE Corp.*, 834 S.W.2d 930 (Tenn.1992); *Howard Stores Corp. v. Foremost Ins. Co.*, 82 A.D.2d 398, 441 N.Y.S.2d 674, 676 (1981). Mikob asserts that because the Policy insured the entire premises, which include the three apartment buildings and the amenities necessary for a "waterfront community lifestyle," the Policy covers the rental income lost by the complex as a whole. Mikob argues that the complex as a whole is dependent on the amenities, creating "mutual dependency."

■ Mikob relies primarily on *Studley Box & Lumber Co. v. National Fire Ins. Co.*, 85 N.H. 96, 154 A. 337 (1931) to support its theory of mutual dependency. In *Studley Box*, the insured sued under a business interruption policy after fire destroyed a stable and several horses used in operating the insured's saw mill business. The New Hampshire Supreme Court found that the business-interruption insurance covered the business as a whole. Because the stable, the equipment in the stable, and the horses were all necessary to the business operation, the court found that the units of the business were "mutually dependent" and held that the insured's claims for partial business losses were covered.

Royal argues that Mikob's reliance on *Studley Box* is misplaced. First, the law is different. Texas, unlike New Hampshire, has not adopted the "mutual dependency"

theory. Second, the facts are different. *Studley Box* involved assets that were in fact mutually dependent (a saw mill and the horses necessary for its operation). The fire in *Studley Box* caused an actual cessation of operations in the saw mill, although it was otherwise undamaged by the fire. The three separate apartment buildings at issue here are not mutually dependent; Buildings A and B could and did continue to operate after the fire destroyed Building C. Third, the policy language in *Studley Box* differed from the language at issue here. In *Studley Box*, the policy expressly provided coverage for a "partial suspension" of business operations; no such language is present in the Policy.

This court finds Mikob's argument unpersuasive. Mikob bases its argument on the reduced appeal of the entire complex due to the loss of amenities resulting from the fire. It is undisputed that the fire did not cause a "necessary suspension of operations" in Buildings A and B, as required by the Policy. Each apartment remained available for rent in Buildings A and B after the fire.

*Ramada Inn Ramogreen, Inc. v. Travelers Indemnity Co. of America*, 835 F.2d 812 (11th Cir.1988), supports Royal's argument that when a fire occurs in one building on an insured's premises, business interruption coverage does not extend to other buildings that do not experience an actual suspension of operations. In *Ramogreen*, a fire destroyed a restaurant in a hotel. The hotel sued the insurer to recover for a decline in occupancy resulting from the closing of the restaurant. The policy provided coverage for "loss of earnings resulting directly from the necessary interruption of the insured's business...." The insurer paid the claim for loss of earnings resulting from a necessary interruption of the restaurant's business, but denied coverage for loss of earnings related to the other four hotel buildings. The insured alleged that the restaurant was a "vital part of the hotel operation, each operation being mutually dependent upon each other," and that a loss of income from a decrease in occupancy of the four hotel buildings constituted a business interruption under the policy. The trial court disagreed and

granted the insurer's motion for summary judgment.

The Eleventh Circuit affirmed, holding as follows:

[R]ecovery is intended when the loss is due to inability to use the premises where the damage occurs ... [T]he hotel operation was able to accommodate the same number of patrons, albeit their actual number of customers may have been reduced.

This case does not present a situation like *Studley [Box]*, where fire in one building caused an actual cessation of operations in another building. Instead, the fire in the restaurant caused a loss of business in the hotel, but the court held in *Hotel Properties [Ltd. v. Heritage Ins. Co. of America*, 456 So.2d 1249 (Fla.App.1984)] that this type of loss is not covered by a business interruption policy.

*Id.* at 814 (citations omitted).

Mikob argues that *Ramogreen* is distinguishable because the restaurant and the four hotel buildings were insured under separate policies. Mikob also argues that the court specifically noted that the result would "probably have [been] different if one of the four buildings comprising the inn covered by the policy had been damaged." (Docket Entry No. 32, p. 11). However, the opinion does not support Mikob's argument. The *Ramogreen* court stated that:

[t]he concept of mutual dependency is more appropriately applied to the four hotel buildings, which together comprise a single unit. If any one of them were *sufficiently* damaged, a *portion* of the hotel operation would be suspended. The insurance policy clearly provides for this situation by allotting an aggregate sum which encompasses damage to any one of the four buildings.

*Id.* at 814 (emphasis added). The court found that decreased occupancy losses were not covered when the decrease results from an inability to use the premises where the damage occurs.

Mikob argues that the decision by some tenants not to continue to rent is a "necessary suspension" under the Policy. The cases interpreting similar policy language do not support Mikob's argument. In *Home Indemnity Co. v. Hyplains Beef*, 893 F.Supp. 987 (D.Kan.1995), *reconsideration denied*, 1995 WL 584498 (D.Kan.1995), the insurance policy contained the following business interruption clause:

[insurer] will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations ... caused by or resulting from any covered cause of loss.

The insured argued that the "necessary suspension" requirement was met when its computer system failed, resulting in a loss of electronic data and a decrease in production rate, which in turn caused a loss of business income. The court disagreed, finding that the ordinary meaning of "necessary suspension" required that the direct physical loss of or damage to the insured's property result in a complete cessation of operations. The court distinguished *Studley Box* and the mutual dependency theory because *Studley Box* involved a fire in one building that caused an actual cessation of operations in another building and the policy expressly provided coverage for a "partial suspension" of business operations. 893 F.Supp. at 991–93.

This result is consistent with other cases applying similar policy language. In *Keetch v. Mutual of Enumclaw Ins. Co.*, 66 Wash. App. 208, 831 P.2d 784 (1992), the plaintiff's motel was buried in six inches of ash after Mount St. Helens erupted. Although the motel suffered a dramatic decrease in hotel occupancy, it remained open for business. The insurer agreed that the eruption was an "occurrence" and that coverage extended to the cleanup and repair expenses. However, the insurer denied coverage for business interruption benefits.

The insured argued that because part of the complex (the motel) suffered a covered loss (physical damages due to the volcanic ash), business interruption coverage extended to the income lost from a reduction in the quality of service and a decrease in occupancy. The insurer argued that because the

motel was not required to suspend operations after the eruption, such losses were not covered. The trial court agreed with the insured, reasoning that the ash on the premises after the eruption damaged the physical appearance and attractiveness of the motel and caused a decrease in occupancy. The partial business interruption was thus a covered loss.

The court of appeals reversed, holding that business interruption insurance only covers losses resulting from an inability to continue to use specified premises. *Id.* at 786 (numerous citations omitted). The court stated as follows:

> The endorsement [does not] afford coverage because the motel's quality of service was reduced during the clean up period. The motel had the same number of rooms available both before and after the eruption; none of the motel rooms were unavailable because of ash damage ... The trial court erred in holding the [plaintiffs] suffered a business interruption covered by their loss of earnings endorsement.

*Id.* at 786–87.

Mikob attempts to distinguish *Keetch* because in the present case, unlike *Keetch,* there was actual physical damage to one of the three buildings. However, the insured party in *Keetch* made the same argument, asserting that the motel was damaged and therefore any decrease in income would be covered. The court rejected this argument, stating:

> [t]he [insureds'] attempt to distinguish the authorities cited by [the insurer] on the basis that here the court found the motel sustained actual damage. The policy, however, is clear—it "insure[s] against loss of earnings" resulting directly from necessary interruption of business caused by the perils insured against ... "[ ] The damage to landscape or shrubbery did not directly result in a business interruption loss." The motel had the same number of rooms available both before and after the eruption; none of the motel rooms were unavailable because of ash damage.

*Id.* at 786.

In the present case, Mikob argues that the physical damage to Building C and the complex amenities caused a reduction in the marketability of the complex, which caused a decrease in occupancy of Buildings A and B. This is very similar to the argument rejected in *Keetch.* As in *Keetch,* the physical damage to part of the insured's premises did not cause a necessary suspension of operations or tenancy in the other, undamaged units. A reduction in the "quality of life" in the undamaged parts of the premises does not trigger the business interruption clause. *See Keetch,* 831 P.2d at 786 ("[t]he endorsement does not provide that coverage exists because the motel's quality of service may be diminished by an occurrence.").[2]

Damage to the amenities at Mikob's apartment complex, like the damage to the hotel restaurant in *Ramogreen* and to the motel in *Keetch,* did not cause "an inability to continue

---

2. Mikob asserts that the present case is more analogous to *Lite v. Firemen's Insurance Co.,* 119 A.D. 410, 104 N.Y.S. 434 (1907), in which the plaintiff had rented thirty-four apartment units located in three adjoining buildings. After a fire damaged ten of the units, the plaintiff sued for loss of profits. The court ruled that a standard form fire insurance policy that insured against all direct loss or damage by fire, including loss of profits, provided coverage for the loss of profits for the ten damaged apartments. *Lite* does not further Mikob's position. In *Lite,* the ten damaged apartments were "unusable"; there was a "necessary suspension of operations" in those ten apartments. All the individual apartments in Buildings A and B, in contrast, are habitable. Mikob has not asserted or provided summary judgment evidence that a single unit in Buildings A and B was rendered uninhabitable because of

the fire. There was no "necessary suspension of operations or tenancy" in Buildings A and B.

Mikob's attempt to distinguish *National Children's Expositions Corp. v. Anchor Ins. Co.,* 279 F.2d 428 (2d Cir.1960) is similarly unpersuasive. In *National Children's Expositions,* a snowstorm limited attendance at an exposition. The court held that there was no partial loss within the terms of the business interruption policy because no part of the insured premises was rendered unusable. In the present case, no part of Buildings A and B is unusable. Rather, some tenants are reluctant to live there because of the fire. In *National Children's Expositions,* the policy required that the actual "holding of or continuance of" the exposition be prevented. The Policy requirement that there be a "necessary suspension of operations or tenancy" provides such a limitation in the present case.

to use specified premises or [an] inability to keep the premises occupied by a tenant." *Ramogreen,* 835 F.2d at 814. Even if the character of the apartment complex was adversely impacted by the fire, there was no "necessary suspension of operations or tenancy" in Buildings A and B. As in *Ramogreen and Keetch,* the amenities which attract customers may be affected by a covered loss, but if the insured premises are still operating, the business interruption clause does not cover a decrease in income.[3]

## III. Conclusion

The court finds that the Policy does not provide coverage for the loss of rental income in Buildings A and B. Royal's motion for partial summary judgment is GRANTED; Mikob's cross-motion is DENIED.

The parties are to file a joint submission identifying the remaining issues in this case and proposing a schedule for resolving them, or, if appropriate, a proposed final judgment, within ten days from the date this order is entered.

---

**3.** *See also Howard Stores Corp. v. Foremost Ins. Co.,* 82 A.D.2d 398, 441 N.Y.S.2d 674 (1981), *aff'd,* 56 N.Y.2d 991, 453 N.Y.S.2d 682, 439 N.E.2d 397 (1982) (recovery denied for water damage to business where there was no actual suspension of business, but rather an alleged adverse affect on continuing sales); *Pacific Coast Engineering Co. v. St. Paul Fire & Marine Ins. Co.,* 9 Cal.App.3d 270, 88 Cal.Rptr. 122 (1970) (purpose of business interruption insurance is to indemnify for loss due to inability to continue to use specified premises); *Rothenberg v. Liberty Mutual Ins. Co.,* 115 Ga.App. 26, 153 S.E.2d 447 (1967) (recovery under business interruption policy denied where theft of merchandise resulted in a loss of business; court held insured had not suffered an interruption of business, but rather a diminution in volume).